(No. 40654.-

JOANNE HIRSCHFIELD *et al.*, Appellants, *vs.* EDWARD J. BARRETT, County Clerk, Appellee.

*Opinion filed May 29, 1968.—Rehearing denied Sept. 17, 1968.*

L. LOUIS KARTON and MYER H. GLADSTONE, both of Chicago, for appellants.

JOHN J. STAMOS, State's Attorney, of Chicago, (EDWARD J. HLADIS, Chief of Civil Division, and RONALD BUTLER, Assistant State's Attorney, of counsel,) for appellee.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

Plaintiffs bring this complaint for a mandatory injunction to compel defendant as county clerk of Cook County to count and report the write-in votes of eight of the plaintiffs who voted at the November 8, 1966, general election in Cook County outside of the city of Chicago. These plaintiffs wrote in the name of Michael M. Phillips, also a plaintiff, and voted for him for associate judge of Cook County to fill an allegedly unexpired term resulting from the death of Associate Judge H. R. Stoffels on August 28, 1966. There was no indication on the ballots submitted to the electorate at that election that any such vacancy existed, and Phillips's eight votes constituted all of the votes cast for this office. Plaintiffs therefore now assert that by virtue of their eight votes defendant should certify Phillips as the duly elected judge to fill said allegedly unexpired term. Defendant filed a motion to dismiss the complaint for failure to state a cause of action and the trial court sustained the motion and dismissed the suit. On direct appeal to this court plaintiffs assert both State and Federal constitutional questions.

The following additional facts are not in dispute: that Associate Judge H. R. Stoffels at the time of his death was holding office as associate judge pursuant to paragraph 4 of the schedule of article VI of our constitution by virtue of his election to the office of judge prior to January 1, 1964, for a term running beyond January 1, 1964, which would not expire in 1966; that at the time of his death 71 days prior to the general election of November 8, 1966, and at the time of the general election, there were and are now more than 20 associate judges of the circuit court of Cook County outside Chicago; that no political party nominated a candidate by party convention for the vacancy claimed by plaintiffs to require filling; that eight of the plaintiffs in this action were duly registered and qualified voters residing outside of Chicago in the county of Cook; that plaintiff, Michael M. Phillips, was a resident of the county of Cook

outside of the city of Chicago and is a duly licensed attorney at law and a member of the Illinois Bar in good standing; that the defendant county clerk following the general election of November 8, 1966, proclaimed the results of the election as required by law but did not report any of the eight votes cast for plaintiff Phillips to fill the alleged vacancy.

It is clear that the reason for the failure of officials to hold a formal election to fill the alleged vacancy and defendant's refusal to certify Phillips as a duly elected associate judge for the remaining portion of Judge Stoffels's unexpired term was because of the officials' common belief that such an election was prevented by section 1 of the so-called Attrition Statute (Ill. Rev. Stat. 1965, chap. 37, par. 72.41) which reads in pertinent part:

"§ 1. Except as provided in sub-paragraphs (1), (2), (3) and (4), vacancies in the office of associate judge in any county or unit of any circuit shall not be filled.

\* \* \*

"(4) If in the unit comprised of the territory of the circuit of Cook County outside the corporate limits of Chicago the occurrence of a vacancy results in fewer than 12 resident associate judges remaining in office in such unit, the vacancy shall be filled. If in the unit comprised of the territory of the unit of the circuit of Cook County within the corporate limits of Chicago the occurrence of a vacancy results in fewer than 36 resident associate judges remaining in office in such unit, the vacancy shall be filled.

\* \* \*

"Vacancies authorized to be filled by this Act shall be filled in the manner provided in Article VI of the Constitution."

This Act was passed on August 1, 1963, some nine months after the new judicial amendment (article VI, hereinafter referred to as the Judicial Article) to the Illinois constitution was adopted, and plaintiffs allege that the

Attrition Statute is wholly void because it conflicts with the clear language of the Judicial Article.

The gist of the plaintiffs' argument is that their eight votes should have been counted to effect the election of Phillips because of the language embodied in the second paragraph of section 10 of the Judicial Article:

"The office of any judge shall be deemed vacant upon his death, resignation, rejection, removal or retirement. Whenever a vacancy occurs in the office of judge, the vacancy shall be filled for the unexpired portion of the term by the voters at an election as above provided in this Section, or in such other manner as the General Assembly may provide by law as set out in this Section and approved by the electors."

Plaintiffs contend that "everyone is presumed to know the law", that the Attrition Statute in only permitting the election of associate judges in Cook County outside the city of Chicago to fill vacancies which result in fewer than 12 resident associate judges therefrom is repugnant to the affirmative mandate of the above constitutional provision and is thus void; that therefore the "law" in this instance was the constitutional dictate of section 10 which required that the judicial vacancy created by Judge Stoffels's death be filled in the election at which plaintiffs cast eight votes for Phillips. They further assert that they should not be disenfranchised by a refusal to count the ballots on which they recorded their votes for Phillips by writing in both the office and his name; and they contend that the failure of the major political parties to nominate candidates for this office under the normal election procedure (article VI, section 10) may not be used to defeat their diligent efforts to elect Phillips to the "vacant" associate judgeship.

The fallacy of the plaintiffs' argument is that they overstate the effect of what they consider to be the unequivocal and mandatory language of the above-quoted second paragraph of section 10, thereby ignoring the funda-

mental principle governing constitutional and legislative construction: the intention of the drafters. In *Peabody* v. *Russel,* 301 Ill. 439, 443, we noted: "The same general principles to be applied in construing statutes apply in the construction of constitutions. [Citations.] In the construction of a constitution courts should not indulge in speculation apart from the spirit of the document, or apply so strict a construction as to exclude its real object and intent." In *People ex rel. Chicago Bar Ass'n* v. *Feinberg,* 348 Ill. 549, 566, we stated: "The meaning of the constitution is not to be ascertained by giving too great weight to a single phrase, sentence or section. Its several provisions are all parts of one instrument and must be construed together, giving each its proper consideration." And in construing the same Judicial Article now at issue we have said: "we must read the amendment as a whole and attribute to each part a meaning that is consistent and harmonious with the amendment's overall intendment and purpose. [Citing cases.]" *People ex rel. Giannis* v. *Carpentier,* 30 Ill.2d 24, 28.

When the Judicial Article is viewed as a whole it is clear that plaintiffs' contention that the second paragraph of section 10 required the filling of Judge Stoffels's position by the electors of Cook County outside of Chicago is wholly without merit. The second paragraph of section 8 of the Judicial Article set out below clearly invests the legislature with the power to prescribe by statute the number of Cook County associate judges to be elected outside of Chicago subject to a constitutionally designated minimum of 12 resident judges from that area:

"There shall be one circuit court for each judicial circuit which shall have such number of circuit and associate judges and magistrates as may be prescribed by law; provided, that there shall be at least twelve associate judges elected from the area in Cook County outside the City of Chicago and at least thirty-six associate judges from the City of Chicago. In Cook County, the City of Chicago and the area outside

the City of Chicago shall be separate units for the election or selection of associate judges. All associate judges from said area outside the City of Chicago shall run at large from said area, such area apportionment of associate judges shall continue until changed by law."

The Attrition Statute complained of by plaintiffs was in fact an exercise of the legislative discretion specifically granted by the above provision to prescribe "by law" the number of Cook County associate judges outside of Chicago. That statute adopts the section 8 minimum of 12, and it represents valid legislation implementing the Judicial Article as the effective date of both the article and the statute was designated as January 1, 1964. The operative effect of the Attrition Statute is to prevent the election of any associate judge in Cook County outside of Chicago until a vacancy should occur that would leave less than 12 resident associate judges in office from that geographic area. Since Judge Stoffels's death occurred when there were more than 20 associate judges still in office in Cook County outside of Chicago, there was no "vacancy" that could be filled under the Attrition Statute. That this result was contemplated by the drafters of the Judicial Article appears clearly from the fact that section 8 established a minimum number of 12 associate judges from the area concerned rather than adopting as an arbitrary minimum the number of such judges in office on the date the Judicial Article went into effect.

To adopt the construction of the Judicial Article urged by plaintiffs would require the perpetual refilling of *every* judgeship in existence at the effective date of the article and this would completely eliminate the possibility of ever legislatively reducing the number of Cook County associate judges outside of Chicago to the constitutionally prescribed minimum of 12. It would likewise fix the minimum number of judgeships in this State at the number existing on January 1, 1964, a result clearly incompatible with the above quoted language in section 8 as well as the language of the

second paragraph of section 11 of the Judicial Article which provides that *"Any law reducing the number of * * * associate judges* in any circuit shall be without prejudice to the right of judges in office at the time of its enactment to seek retention in office as hereinabove provided." (Emphasis added.) The fact that section 11 makes specific reference to the possibility of a "law reducing the number of * * * associate judges" leads us to the inescapable conclusion that a law such as the Attrition Statute which implements the section 8 minimum of 12 associate judges from outside of Chicago was fully within the intention and contemplation of the constitutional drafters, and we therefore hold that the Attrition Statute is not in derogation of the constitution but wholly in accord with its provisions when viewed as a composite whole. Although plaintiffs emphasize that their position is only that the vacancy must be filled for the remaining portion of the unexpired term, referring to *People ex rel. Sullivan* v. *Powell,* 35 Ill.2d 19, and *People* v. *Rezek,* 410 Ill. 618, and that the provisions of the Attrition Statute make no reference to the "term" but deal only with the "office", it seems to us clear that it would be quite unreasonable to ascribe to the drafters an intent to require an election for an unexpired term when the office will terminate at the end of the term.

The presence of surplusage, however, is not to be presumed in statutory or constitutional construction (*Winnebago County* v. *Industrial Com.,* 34 Ill.2d 332, 335; *Pinkstaff* v. *Pennsylvania Railroad Co.,* 31 Ill.2d 518, 524), and the fundamental rule that each word, clause or sentence must, if possible, be given some reasonable meaning (*People ex rel. Barrett* v. *Barrett,* 31 Ill.2d 360; *Doubler* v. *Doubler,* 412 Ill. 597, 600) is especially apropos to constitutional interpretation. What then is the reasonable meaning of the language of section 10 relied upon by plaintiffs which states that "Whenever a vacancy [due to death, resignation, rejection, removal or retirement] occurs in

the office of judge, the vacancy shall be filled for the unexpired portion of the term by the voters at an election * * * or in such other manner as the General Assembly may provide by law as * * * approved by the electors"? The historical note to this section in the Smith-Hurd Annotated Statutes reveals that the provisions of the Judicial Article respecting the selection and tenure of judges "represent a compromise between the proponents of popular election of judges and the proponents of the American Bar Association or American Judicature Society plan under which judges are initially appointed for a term of years by the governor from among nominees submitted by a nonpartisan commission or committee and thereafter may at their sole discretion seek retention in office from time to time for additional terms 'on their records' on a nonpartisan ballot which poses the sole question whether the particular judge shall be retained in office." S.H.A. Const. Art. 6, § 10.

The compromise relating to the manner of initial selection and the subsequent retention of judges was the result of a hard-fought struggle, and we find that the use of the mandatory language in section 10 is attributable to the drafters' design to state in unequivocal terms the *method* by which new judges would be initially selected to fill vacancies—"by the voters at an election"—unless two thirds of the members of both Houses of the General Assembly propose a different method which is approved by the electorate in a referendum. (Art. VI, sec. 10.) The error made by plaintiffs in this case is that they unduly limit their reading of the second paragraph of section 10 to a few literal words therein that "Whenever a vacancy ocurs in the office of judge, the vacancy shall be filled for the unexpired portion of the term * * *." We believe that our review of the other sections of the Judicial Article and of the legislative history behind its passage reasonably shows that the intent was that any vacancy occurring under "any law reducing the number of * * * associate judges" (section 11),

such as the Attrition Statute, is subject to the constitutional minimum for judges under section 8 (12 in Cook County outside the city of Chicago), and that the occurrence of a vacancy which leaves less than the prescribed minimum *"shall be filled* for the unexpired portion of the term *by the voters at an election* * * *."* (Emphasis added.) Thus, the mandatory language of section 10 relates to the fact that all new judges shall acquire office *by election,* and not as plaintiffs' argument would suggest that every time a judge holding office at the effective date of the Judicial Article leaves the bench an election must be held to replace him.

In addition to plaintiffs' argument that the Attrition Statute is repugnant to the Judicial Article, they assert that the statute violates sections 22 and 34 of article IV of the Illinois constitution and they intimate that the second paragraph of section 8 of the Judicial Article is violative of the due-process clause of the United States constitution. This last contention is supported neither by reason, nor by citation of authority in plaintiffs' brief, and requires no further discussion. Plaintiffs' remaining contentions are that the references in subparagraph (4) of the Attrition Statute to "the unit comprised of the territory of the circuit of Cook County outside the corporate limits of Chicago" and "the unit comprised of the territory of the unit of the circuit of Cook County within the corporate limits of Chicago" constitute (1) impermissible special legislation (art. IV, sec. 22, const. of Ill.), and (2) legislation affecting the municipal government of the city of Chicago which could not take effect until approved by the voters of that city. (Art. IV, sec. 34, const. of Ill.) We have determined earlier herein that the Attrition Statute validly implements the Judicial Article, and we find the statute's descriptive classifications relating to Chicago and the remaining territory of Cook County outside the corporate limits of Chicago to be fully warranted by use of substantially the same language

in the second paragraph of section 8 of the Judicial Article. Since the Attrition Statute implements and adopts the classification scheme employed in the Judicial Article, this classification is clearly in accord with the constitution. Neither section 22 nor 34 of article IV may be utilized to upset legislation enacted in compliance with the Judicial Article which was adopted long after those general sections (see *Co-ordinated Transport, Inc.* v. *Barrett,* 412 Ill. 321, 330), and which dealt specifically with the subject matter. *People ex rel. Siekmann* v. *Pennsylvania Railroad Co.,* 385 Ill. 350; *Moyer* v. *Board of Education,* 391 Ill. 156, 159.

The judgment of the circuit court of Cook County dismissing plaintiffs' complaint is affirmed.

*Judgment affirmed.*