# Illinois Official Reports

## Appellate Court

***Mitchell v. Village of Barrington*, 2016 IL App (1st) 153094**

| | |
|---|---|
| Appellate Court Caption | JODIE MITCHELL, Plaintiff-Appellant, v. VILLAGE OF BARRINGTON, an Illinois Municipal Corporation, Defendant-Appellee. |
| District & No. | First District, Fourth Division<br>Docket No. 1-15-3094 |
| Rule 23 order filed<br>Rule 23 order<br>withdrawn<br>Opinion filed | September 8, 2016<br><br>November 23, 2016<br>November 23, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CH-34218; the Hon. David B. Atkins, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Barbara J. Bell, of Arlington Heights, for appellant.<br><br>James J. Powers, of Clark Baird Smith LLP, of Rosemont, for appellee. |

JUSTICE HOWSE delivered the judgment of the court, with opinion.
Justices McBride and Burke concurred in the judgment and opinion.


## OPINION

¶ 1     Plaintiff Jodie Mitchell was employed as a paramedic for defendant Village of Barrington (Village). In 2007, Mitchell sustained an injury while on the job. The Village eventually determined that Mitchell's injury prevented her from being able to perform her duties and terminated her from that position. Mitchell later sought health care benefits under the Public Safety Employee Benefits Act (Act) (820 ILCS 320/1 *et seq.* (West 2012)), and the Village denied that request, finding she was not covered under the Act. Mitchell subsequently submitted a formal application for benefits under the Act, and her request was again denied. Mitchell filed this lawsuit, seeking benefits under the Act. The Village filed a motion for summary judgment and the trial court granted that motion finding Mitchell's claims were barred by the doctrine of *laches*. Mitchell now appeals the trial court's ruling on summary judgment.

¶ 2                                    Background

¶ 3     On January 21, 2007, Mitchell responded to a call-for-service at a residential home in Barrington by driving an ambulance. Upon exiting the ambulance, Mitchell slipped on a patch of ice and injured her back. Mitchell worked several of her following shift days, but then went on a medical leave of absence in April 2007.

¶ 4     The Village terminated Mitchell's employment in January 2008, issuing her termination letter on January 29, 2008. In the letter, the Village explained that "you are at maximum medical improvement, and it appears there will be no significant change in your medical condition in the foreseeable future." The letter went on to explain that because of Mitchell's "ongoing inability to perform [her] job duties, the Village of Barrington Board of Trustees at its January 28, 2008 Board Meeting acted on a motion authorizing and approving [her] separation from employment."

¶ 5     Mitchell disagreed that there would be no significant change in her medical condition and that the Village "jumped the gun" in terminating her, believing that she would have been able to come back to work soon.

¶ 6     After her termination, Mitchell sought health insurance benefits under the Act (820 ILCS 320/1 *et seq.* (West 2012)). The Act provides for health benefits for firefighters who suffer catastrophic injuries in the line of duty. Section 10(a) of the Act states:

> "An employer who employs a full-time law enforcement, correctional or correctional probation officer, or firefighter, who, on or after the effective date of this Act suffers a catastrophic injury or is killed in the line of duty shall pay the entire premium of the employer's health insurance plan for the injured employee, the injured employee's spouse, and for each dependent child of the injured employee until the child reaches the age of majority or until the end of the calendar year in which the child reaches the age of 25 if the child continues to be dependent for support or the child is a full-time or part-time student and is dependent for support." 820 ILCS 320/10(a) (West 2012).

¶ 7    To determine whether Mitchell is eligible for benefits under the Act, it is necessary to examine the history of Mitchell's employment with the Village. Mitchell was hired by the Village on August 1, 1988 as a "paramedic." At the time of that hire, Mitchell did not participate in any type of testing process administered by the Village's Board of Fire and Police Commissioners as that Board did not exist in 1988. At the time Mitchell was hired, she already possessed a "Firefighter II" certification from a prior employer. Mitchell was not required to have that certification for her paramedic position with the Village. When hired, Mitchell worked a traditional 24-hour on, 48-hour off schedule.

¶ 8    In 1994, the Village decided to convert its paramedic positions to full-time firefighters. Accordingly, the Village sent Mitchell and other paramedics a letter in March 1994 offering the paramedics an opportunity to become sworn full-time "Firefighters/Paramedics" who would be subject to appointments and promotions by the Village's Board of Fire and Police Commissioners. Among other things, the letter clarified that any paramedic that declined the offer "will continue to be classified as a Civilian Paramedic under the Village's Pay Plan with continuing participation in the Illinois Municipal Retirement Fund." For personal reasons, Mitchell declined the Village's offer to become a sworn firefighter/paramedic and thus remained a civilian paramedic.

¶ 9    In June 1999, the Village's manager sent Mitchell a letter explaining a potential staffing concern that had arisen due to the "two-in, two-out" respirator protection standards that had been promulgated by the U.S. Department of Labor. The letter also confirmed that Mitchell preferred to remain a civilian paramedic instead of becoming a full-time firefighter.

¶ 10    As a result of the Village's need to comply with the new "two-in, two-out" regulations and address Mitchell's desire to remain a paramedic with her same responsibilities and duties, the Village offered Mitchell the following arrangement:

"It has therefore been determined that you may continue as a paramedic working a 24/48 hour shift schedule and meet the requirements of the standard beyond September 1999 provided you are qualified to *assist* with fire suppression and related duties. The Village has determined that in order for you to do so the following requirements must be met:

— Maintain certification as Firefighter II.

— Successfully complete a program of annual training, defined by the Fire Chief to meet rescue/fire suppression team operations requirements. A portion of this training may be provided outside of the normal work schedule.

— Successfully demonstrate the ability to meet any standards required of a rescuer wearing self-contained breathing apparatus.

— Continue to meet all job requirements for that of paramedic including that of rescuing persons within burning structures where atmospheres are immediately dangerous to life and health."

¶ 11    On August 11, 1999, then-Fire Chief Danley sent Mitchell a memo that further clarified that the types of standards that she would be expected to satisfy when assisting with fire suppression. The memo clarified that "[i]t is intended that you would not normally be assigned as part of the initial attack crew." Only firefighter/paramedics would have been assigned to the "initial attack crew."

¶ 12    Mitchell ultimately agreed to the arrangement that had been proposed by Village manager Irvin, which allowed her to remain a civilian paramedic, and Mitchell's agreement was expressed by signing the bottom of the Village Manager's June 1999 letter.

¶ 13    After 1999, Mitchell remained a civilian paramedic with the Village's fire department. She was paid in accordance with the wage scales found in the collective bargaining agreements negotiated between the Village and International Association of Firefighters (Union). The Union was Mitchell's exclusive bargaining representative for purposes of negotiating wages, hours, and other terms and conditions of employment. The Union negotiated hourly rates for Mitchell that consistently ranged from 7.5% to 9.6% less than the wages for full-time firefighter/paramedics. In accordance with the lower pay, Mitchell's duties were less than those of a full-time sworn firefighter. Mitchell presented no evidence that her job title with the Village was ever changed from civilian paramedic to full-time firefighter or sworn firefighter/paramedic.

¶ 14    After her injury, Mitchell was represented by an attorney, Thomas Duda, for purposes of a workers' compensation claim against the Village. On August 31, 2009, Duda wrote a letter to the Village's human resources coordinator, Julie Meyer, regarding "Jodie A. Mitchell v. Village of Barrington Fire Department, Demand for Payment of Health Premiums per the Act, 820 ILCS 320/10." In that letter, Duda stated that he represented Mitchell in the workers' compensation claim against the Village, and then demanded payment by the Village of Mitchell's past and future health insurance premiums pursuant to section 10 of the Act (820 ILCS 320/10 (West 2008)).

¶ 15    In response, on November 3, 2009, the Village's attorney wrote to Duda, denying the request for health care premiums pursuant to section 10 and stated: "Ms. Mitchell is not a firefighter covered by the Act, nor was she a sworn member of the Fire Department. Thus, by definition, she is not eligible for consideration for this benefit." The letter went on to state: "Should you disagree with this position, you are welcome to submit any and all evidence you have that demonstrates Ms. Mitchell should be covered by the Act. If she is covered, the Village would of course review her application at that time and determine whether her injury qualifies her for benefits."

¶ 16    On March 24, 2011, Duda wrote to the Village to again demand Mitchell's health insurance premiums. Specifically, the letter states: "The undersigned is writing once again now that the above-captioned claims have been settled to demand payment of health insurance premium benefits for Jodie A. Mitchell who suffered a catastrophic injury while responding to an actual emergency on January 21, 2007. Attached is a copy of the previous correspondence forwarded to your attention with no response. Once again we are demanding for compliance with statutory obligations by the Village. To date, no 'decision' has been communicated to your former employee or this office."

¶ 17    On April 1, 2011, the Village's attorney responded that the Village had responded to the demand for health insurance premiums back in November 2009, wherein the attorney made it clear that he did not believe Mitchell was covered by the Act (820 ILCS 320/1 *et seq.* (West 2012)), because she was never a sworn employee. The letter went on to state: "We invited you and your client to submit a response if you disagreed. You never provided a response and, hence, we considered the matter closed. We believe your attempt—over a year later—to revive this claim is untimely. Without waiving our position on this matter, however, should you disagree and truly believe your client is entitled to benefits, your client is welcome to complete

the enclosed application and submit any and all evidence you have that demonstrates: (i) Ms. Mitchell is covered by the Act; (ii) she is eligible for benefits, and (iii) this renewed demand is timely."

¶ 18    On April 4, 2011, Beverly Zak, a representative from Duda's law office, forwarded the application to Mitchell to fill out so that it could then be submitted to the Village.

¶ 19    On May 3, 2011, Duda wrote to Mitchell and stated that he had been advised that Mitchell retained a new attorney, Stanley Jakala, to represent her case to recover health care premiums pursuant to section 10. The letter then advised that Duda would not be "opening a file and not undertaking to represent you in this regard in any fashion."

¶ 20    On September 2, 2011, Mitchell's new counsel, Jakala, wrote to the Village, advising that he was now representing Mitchell and that Mitchell was renewing her rights to health care benefits pursuant to the Act. The letter also enclosed Mitchell's application for Public Safety Employee Benefits Act benefits, which she had signed and dated on May 21, 2011.

¶ 21    On April 26, 2012, Mitchell's amended complaint states the Village's attorney denied her health insurance benefits based on her Public Safety Employee Benefits Act application.

¶ 22    On September 10, 2012, Mitchell filed her Complaint for Declaratory Judgment against the Village, seeking health insurance benefits under the Act. She filed a first amended complaint on April 12, 2013. In the amended complaint, Mitchell alleged that her duties as a licensed emergency technician/paramedic "were the same as the paramedic duties performed by sworn paramedics/firefighters who were employed by the Village." The amended complaint also stated that Mitchell was "never a sworn firefighter" and that she had been a paramedic for the Village for her entire career "without her being appointed to that position by the Fire and Police Commission of Barrington."

¶ 23    After the close of discovery, the Village filed a motion for summary judgment on April 7, 2015. In its motion, the Village argued that it was entitled to summary judgment because: (1) Mitchell's complaint was barred by the five-year statute of limitations, (2) Mitchell's deposition testimony proved that she had not suffered a "catastrophic injury" within the meaning of the Act, (3) the undisputed record evidence showed that Mitchell was not a full-time sworn firefighter for eligibility purposes under the Act, and (4) Mitchell was guilty of *laches*. The motion also argued that the Village had a rational basis in declining health care benefits to Mitchell, thereby defeating Mitchell's equal protection claim. Following briefing and oral arguments on the motion for summary judgment, the trial court granted summary judgment in favor of the Village based on its finding that Mitchell's claim was barred under the doctrine of *laches* and its finding that Mitchell failed to prove her constitutional equal protection claim. With respect to *laches*, the trial court's order found that there was a 16-month delay between the time the Village denied Mitchell's request for health care benefits pursuant to the Act and the time she reasserted her request for the health care benefits and filed a formal request. The court found that "[b]ecause Mitchell inexplicably waited significantly longer than a six month time period to even make an attempt to reassert her rights, the court finds that such a delay was unreasonable." With respect to the equal protection claim, the court found that the Village offered several rational reasons why it treated civilian paramedics differently than full-time firefighters: "Barrington notes that Mitchell did not have the same responsibilities, and thus was not exposed to the same dangers, as those that receive PSEBA benefits in that Mitchell could not enter burning buildings as part of a first 'attack team' and she generally did not perform engineer driving and pumping duties on a full-time basis." In granting the

Village's motion for summary judgment on those two grounds, the trial court did not consider the other arguments the Village made in support of summary judgment. For the reasons that follow, we affirm the trial court's ruling granting summary judgment in favor of the Village.

¶ 24                                                                    Analysis

¶ 25     Summary judgment is appropriate when the pleadings, depositions, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Forsythe v. Clark USA, Inc.*, 224 Ill. 2d 274, 280 (2007). The purpose of summary judgment is not to try an issue of fact, but to determine if one exists. *Id.* In reviewing a grant of summary judgment, the appellate court will construe the record strictly against the movant and liberally in favor of the nonmoving party. *Id.* Summary judgment should not be allowed unless the moving party's right to judgment is clear and free from doubt. *Id.* If the undisputed facts could lead reasonable observers to divergent inferences, or if there is a dispute as to a material fact, summary judgment should be denied. *Id.* We review a grant of summary judgment *de novo*. *Id.* We may affirm a grant of summary judgment on any basis appearing in the record, " 'whether or not the [circuit] court relied on that basis or its reasoning was correct.' " *Urban Sites of Chicago, LLC v. Crown Castle USA*, 2012 IL App (1st) 111880, ¶ 21 (quoting *Freedberg v. Ohio National Insurance Co.*, 2012 IL App (1st) 110938, ¶ 26).

¶ 26     In its motion for summary judgment and on appeal, the Village argued that it was entitled to summary judgment because: (1) Mitchell's complaint was barred by the five-year statute of limitations, (2) Mitchell's deposition testimony proved that she had not suffered a "catastrophic injury" within the meaning of the Act, (3) the undisputed record evidence showed that Mitchell was not a full-time sworn firefighter for eligibility purposes under the Act, and (4) Mitchell was guilty of *laches*. The motion also argued that the Village had a rational basis in declining health care benefits to Mitchell, thereby defeating Mitchell's equal protection claim. The trial court found that Mitchell's claim was barred under the doctrine of *laches*. On review, the appellate court reviews the judgment of the court and not the reasons given for that judgment (*Nelson v. Aurora Equipment Co.*, 391 Ill. App. 3d 1036, 1044 (2009)), and we may affirm the trial court based on any reason found in the record. *Urban Sites of Chicago, LLC*, 2012 IL App (1st) 111880, ¶ 21.

¶ 27     On appeal, Mitchell argues that she is entitled to benefits under the Act because she should be considered a "firefighter" within the meaning of the Act. The Village argued in both the trial court and on appeal that Mitchell was not eligible for benefits under the Act because she was not a full-time firefighter or a sworn firefighter/paramedic. We will first consider the issue of Mitchell's eligibility for benefits under the Act because the resolution of this issue may be dispositive of all the issues in this case.

¶ 28     The Act provides enhanced health care benefits for full-time firefighters and their families if the firefighter is killed or suffers a catastrophic injury in the line of duty. Section 10(a) of the Act states:

> "An employer who employs a full-time law enforcement, correctional or correctional probation officer, or firefighter, who, on or after the effective date of this Act suffers a catastrophic injury or is killed in the line of duty shall pay the entire premium of the employer's health insurance plan for the injured employee, the injured employee's spouse, and for each dependent child of the injured employee until the child reaches the

- 6 -

age of majority or until the end of the calendar year in which the child reaches the age of 25 if the child continues to be dependent for support or the child is a full-time or part-time student and is dependent for support." 820 ILCS 320/10(a) (West 2012).

The legislature modified the Act to add that the definition of a firefighter included licensed emergency medical technicians (EMTs) who are sworn members of a public fire department. Specifically, section 3 of the Act provides: "For the purposes of this Act, the term 'firefighter' includes, without limitation, a licensed emergency medical technician (EMT) who is a sworn member of a public fire department." 820 ILCS 320/3 (West 2012). We can determine whether Mitchell was eligible for health insurance benefits under the Act by interpreting the language of the statute.

¶ 29 The rule of statutory construction is to give effect to legislative intent. *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.*, 158 Ill. 2d 76, 81 (1994). The language of the statute is the best indication of legislative intent. *Id.* If the language is clear and unambiguous, we give the terms their ordinary meaning and interpret the language without reference to extrinsic materials. *Chestnut Corp. v. Pestine, Brinati, Gamer, Ltd.*, 281 Ill. App. 3d 719, 723 (1996). The presence of surplusage should not be presumed in statutory construction and each word, clause, or sentence must, if possible, be given some reasonable meaning. *Hirschfield v. Barrett*, 40 Ill. 2d 224, 230 (1968); *Stroger v. Regional Transportation Authority*, 201 Ill. 2d 508, 524 (2002) (a statute must be construed as a whole and, if possible, in a manner such that no term is rendered meaningless or superfluous).

¶ 30 First, Mitchell presented no evidence that her job classification with the Village was as a full-time firefighter or sworn firefighter/paramedic. Instead, Mitchell argues that she should be considered a firefighter within the meaning of the Act because she claims she performed duties from time to time that were similar to that of a full-time firefighter. Initially, we note the Village offered Mitchell the opportunity to become a sworn firefighter/paramedic on at least two occasions and Mitchell insisted that she remain a civilian paramedic and was therefore paid at a pay rate lower than a full-time firefighter or sworn firefighter/paramedic.

¶ 31 The record demonstrates that Mitchell was trained to perform some limited support roles to firefighters, such as locating fire hydrants, laying and connecting the hose, carrying ladders, changing air packs, etc. Mitchell was allowed to go into a hazardous atmosphere to rescue one of the Village's firefighters or paramedics, but she was not allowed to rescue a member of the public. Mitchell was never trained to be part of an initial attack crew, and only firefighters/paramedics would be assigned as part of an initial attack crew. Nonetheless, we note the record shows Mitchell's job title and primary job duty was as a paramedic. Although Mitchell had a support role for firefighters, we see no merit to her claim she is a *full-time* firefighter. Moreover, Mitchell's argument that she should be considered a full-time firefighter instead of a civilian paramedic because of her support role for firefighting fails as a matter of law. The argument has been considered by this court before and rejected in the context of pension benefits. *McLear v. Village of Barrington*, 392 Ill. App. 3d 664, 670 (2009). In *McLear*, the plaintiffs claimed that they should be classified as "firefighters" for purposes of transferring pension funds because they participated in firefighting activities, in addition to paramedic duties, while responding to emergency calls for the Village. *Id.* In finding that the plaintiffs could not be considered "firefighters" for purposes of receiving additional pension funds, the court reasoned:

"[T]he sole authority to issue certificates of appointment must rest in the board of fire and police commissioners. Here, the plaintiffs were not appointed by the board of fire and police commissioners as firefighters until 1995, when they also underwent physical agility, polygraph, and psychological exams as part of the process of being appointed. See 65 ILCS 5/10-2.1-6(h) (West 2006)." *Id.* at 673.

As such, in *McLear*, the court recognized that a paramedic cannot be classified as a "firefighter," even if he or she participated in firefighter duties, until he or she is appointed a firefighter, *i.e.*, becomes a sworn firefighter. Here, Mitchell was never appointed to become a sworn firefighter and, in fact, expressed her desire on numerous occasions not to assume those additional responsibilities or become a sworn member of the fire department. Although *McLear* concerned pension rights, we see no convincing reason why we should depart from the rationale in *McLear*. As such, because Mitchell did not fall within the purview of the Act, she is not entitled to health insurance benefits under the Act.

¶ 32    Mitchell also argues that she is a "firefighter" as provided under the amended definition to the Act, which defines firefighters as including licensed EMTs who are sworn members of a fire department. Mitchell argues that because the Act provides that a firefighter under the Act "includes, without limitation" "*sworn*" EMTs, it does not exclude "*unsworn*" paramedics and EMTs. We disagree. The amended statute provides: "For the purposes of this Act, the term 'firefighter' includes, without limitation, a licensed emergency medical technician (EMT) who is a sworn member of a public fire department." 820 ILCS 320/3 (West 2012).

¶ 33    Mitchell concedes in her complaint and first amended complaint that she "was never a sworn firefighter." The admissions in her pleadings constitute judicial admissions. *Konstant Products, Inc. v. Liberty Mutual Fire Insurance Co.*, 401 Ill. App. 3d 83, 86 (2010) ("A party's admissions contained in an original verified pleading are judicial admissions ***."); *Knauerhaze v. Nelson*, 361 Ill. App. 3d 538, 557 (2005) (a statement of fact that has been admitted in a pleading is a judicial admission and is binding on the party making it). Given the fact that Mitchell was never a sworn member of the fire department, she does not fall within the purview of the Act, which requires her to be a licensed EMT "who is a *sworn* member of a public fire department." (Emphasis added.) 820 ILCS 320/3 (West 2012); *Stroger*, 201 Ill. 2d at 524 (a statute must be construed as a whole and, if possible, in a manner such that no term is rendered meaningless or superfluous).

¶ 34    To read the statute as suggested by Mitchell—that both "sworn" and "unsworn" EMTs are included in the amended definition of a firefighter—would render the legislature's use of the word "sworn" superfluous. If the legislature had intended to include both "sworn" and "unsworn" licensed EMTs in its definition of a firefighter, the legislature could have simply eliminated the word "sworn" when it drafted the amendment and simply defined firefighter as to include licensed EMTs. However, it did not do this. We cannot interpret a statute to render a term or phrase superfluous. *Hirschfield v. Barrett*, 40 Ill. 2d 224, 230 (1968) (the presence of surplusage should not be presumed in statutory construction and each word, clause or sentence must, if possible, be given some reasonable meaning); *Stroger*, 201 Ill. 2d at 524 (a statute must be construed as a whole and, if possible, in a manner such that no term is rendered meaningless or superfluous). Based on principles of statutory construction, we reject Mitchell's argument that the amended definition of a firefighter includes both sworn and unsworn EMTs.

¶ 35 Further, "it is a fundamental principle of statutory construction that the express mention of one thing in a statute excludes all other things not mentioned." *Requena v. Cook County Officers Electoral Board*, 295 Ill. App. 3d 728, 733 (1998); see also *People v. Fink*, 94 Ill. App. 3d 816 (1981). In this case, the legislature amended the statute so that the term firefighter also included licensed EMTs who are *sworn* members of a public fire department. Under statutory construction jurisprudence, the inclusion of "*sworn*" licensed emergency medical technicians excludes other positions not mentioned, including "*unsworn*" licensed emergency medical technicians. Therefore, we reject Mitchell's argument that unsworn civilian paramedics are considered firefighters under the amended definition of a firefighter contained in the Act.

¶ 36 Finally, we find Mitchell's equal protection clause claim also fails. Mitchell argues that, in denying her claim for health insurance benefits under the Act, the Village is impermissibly treating civilian paramedics differently than full-time firefighters in violation of her equal protection rights. Whether the Act violates constitutional rights is a question of law, which we review *de novo*. *Jacobson v. Department of Public Aid*, 171 Ill. 2d 314, 323 (1996). We interpret a statute as constitutional if "reasonably possible." *In re Jonathon C.B.*, 2011 IL 107750, ¶ 79. The Supreme Court of Illinois routinely recognizes that statutes have a strong presumption of constitutionality. *People v. Sharpe*, 216 Ill. 2d 481, 486-87 (2005). To defeat this presumption the party challenging must "clearly establish" the alleged constitutional violation. *Id.* at 487.

¶ 37 The equal protection analysis is the same under either the Illinois or United States Constitution. *People v. Shephard*, 152 Ill. 2d 489, 499 (1992); U.S. Const., amend. XIV, § 1; Ill. Const. 1970, art. I, § 2. The equal protection clause "guarantees that similarly situated individuals will be treated in a similar fashion, unless the government can demonstrate an appropriate reason to treat them differently." *In re Jonathon C.B.*, 2011 IL 107750, ¶ 116. This guarantee allows the legislature to create distinctions between different groups of people as long as that distinction avoids "criteria wholly unrelated to the legislation's purpose." *Id.* The rational basis test, which the parties concede is that test to be applied here (*Majid v. Retirement Board of Policemen's Annuity & Benefit Fund*, 2015 IL App (1st) 132182, ¶ 48 ("[t]he deferential rational basis test applies to a statutory classification that does not affect fundamental rights or create a suspect classification")), "simply inquires whether the means employed by the statute to achieve the stated purpose of the legislation are rationally related to that goal." *People v. Breedlove*, 213 Ill. 2d 509, 518 (2004). The court will not make this rational basis inquiry, however, until the movant proves he or she is similarly situated to the comparison group. *People v. Masterson*, 2011 IL 110072, ¶ 25 ("As a threshold matter, though, it is axiomatic that an equal protection claim requires a showing that the individual raising it is similarly situated to the comparison group."). If a movant cannot meet this preliminary threshold, the equal protection claim fails. *People v. Whitfield*, 228 Ill. 2d 502, 512 (2007).

¶ 38 First, Mitchell's equal protection claim fails because she has presented no evidence to show how full-time sworn firefighters are similarly situated to unsworn civilian paramedics like her. *Id.* at 513 (if a movant cannot meet this preliminary threshold in showing that she is similarly situated to the comparison group, the equal protection claim fails).

¶ 39 Second, assuming Mitchell had properly presented her equal protection argument and shown that she is similarly situated to sworn firefighter/paramedics who receive enhanced health insurance benefits under the Act, we find that there is a rational basis for the Village to

treat civilian paramedics like Mitchell differently than full-time firefighters and sworn firefighter/paramedics for purposes of providing health care benefits. *Majid*, 2015 IL App (1st) 132182, ¶ 48 ("The deferential rational basis test applies to a statutory classification that does not affect fundamental rights or create a suspect classification."). First, the State legislature has enacted laws that require employers to bear the increased costs of enhanced insurance coverage for full-time firefighters and sworn EMTs. The legislature did not require employers, such as the Village, to bear increased costs to provide enhanced insurance for civilian paramedics. Furthermore, we note that full-time firefighters and sworn firefighters/paramedics are required to perform more tasks—and specifically dangerous, life-threatening tasks—that civilian paramedics are not required to perform. In other words, civilian paramedics are not required to perform the same dangerous tasks as sworn firefighter/paramedics and full-time firefighters. The employers of firefighters and firefighter/paramedics should be able to provide those employees with enhanced health care benefits as an incentive for them to perform their dangerous jobs without the employer also incurring the additional financial burden of providing the enhanced health care coverage to other employees with less dangerous jobs like civilian paramedics. Sworn firefighter/paramedics and full-time firefighters should be able to perform the dangerous work required of them with the knowledge that if they suffer a catastrophic injury that prevents them from returning to work, they will receive enhanced insurance coverage. "If a court can reasonably conceive of circumstances that justify distinguishing the class benefitted by the statute from the class outside its scope, the classification is constitutional." (Internal quotation marks omitted.) *Id.* Thus, because the Village had a rational basis to treat full-time firefighters and sworn firefighters/paramedics differently than civilian paramedics, Mitchell's equal protection claim fails. Based on our finding that Mitchell was not eligible for benefits under the Act and our resolution of the equal protection argument, it is not necessary to address the other arguments raised by the parties.

¶ 40                                                    Conclusion

¶ 41        For the reasons above, we affirm the trial court's ruling granting summary judgment in favor of the Village.

¶ 42        Affirmed.