2021 IL App (1st) 200652-U

No. 1-20-0652

Filed August 12, 2021

Fourth Division

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| DONALD WILLIAMS, | ) | Appeal from the Circuit |
| | ) | Court of Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 16 L 011069 |
| | ) | |
| DURATEL, LLC, an Illinois limited liability | ) | |
| Company, TRIDENT INDUSTRIES, LLC, | ) | |
| a Delaware limited liability company, | ) | Honorable |
| | ) | Michael F. Otto, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE MARTIN delivered the judgment of the court.
Justices Lampkin and Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held*: Limited liability company that transferred assets and business operations to successor limited liability company under identical ownership did not wrongfully prevent contract conditions requiring payment to former employee and founder of predecessor from occurring when contract expressly bound and inured to the benefit of successors and assigns of the contracting parties.

¶ 2    Donald Williams appeals from an order granting summary judgment in favor of the

defendants, Duratel LLC and Trident Industries, LLC, and denying Williams's cross-motion for

summary judgment. Williams brought an action alleging Duratel breached a 2011 settlement agreement ("2011 agreement") between Williams and Duratel when Duratel licensed key patents and transferred its business operations to Trident, a separate entity. Under the 2011 agreement, Duratel was obligated to make payments to Williams up to $2.5 million conditioned upon Duratel's achievement of certain financial benchmarks. Williams asserted the transfer wrongfully prevented Duratel from achieving those benchmarks. Based on the wrongful prevention doctrine, Williams argued Duratel's wrongful prevention of those benchmarks waived them as conditions for payment and, therefore, Duratel was required to pay him the full $2.5 million despite the nonoccurrence of the conditions. Williams further argued that Trident was liable for Duratel's obligation to him as Trident was a successor and mere continuation of Duratel. The trial court agreed that the transfer from Duratel to Trident wrongfully prevented Duratel from fulfilling the conditions that would require payment to Williams under the agreement. However, relying on Restatement (Second) of Contracts § 245 comment (b) (1981), the court found that the conditions would not have occurred regardless of the transfer and, therefore, the defendants were entitled to judgment as a matter of law. Separately, the trial court found that while Trident would be considered a successor of Duratel for purposes of liability, Trident was not a party to the agreement and Trident's performance could not substitute for Duratel's. On review, we find that the agreement, by operation of its express terms, substitutes successors in place of the original parties and, therefore, the mere fact that Duratel transferred to a successor did not wrongfully prevent the conditions provided in the agreement from occurring. Accordingly, we affirm the judgment of the trial court but for different reasons.

¶ 3                                    I. BACKGROUND

¶ 4        Duratel was formed as an Illinois limited liability company in 2006. Duratel's articles of organization filed with the Illinois Secretary of State listed two members: Donald Williams and Peter Ceko, with each holding a fifty percent ownership interest in the company. An operating agreement for Duratel was executed in 2007 naming only Ceko and the Peter Ceko Children's Trust ("Ceko Trust") as Duratel's only members, each with a fifty percent ownership interest. The operating agreement designated Ceko as the managing member and empowered him with complete decision-making authority and control of the company. The operating agreement did not include Williams as a member, mention him in any capacity, or bear his signature.

¶ 5        Over the next few years, Williams worked full time on behalf of Duratel to develop and commercialize pultruded[1] fiber composite utility poles and related accessories. Williams also obtained patents in his name on several of the products. He fabricated a prototype utility pole cross section, created a company website and marketing materials, found a manufacturer, and arranged for installation of test utility structures. Meanwhile, Ceko, Williams's brother-in-law, worked full-time as a commodity futures trader and had little active involvement with Duratel.

¶ 6        By 2010, Duratel started making sales of its products and Ceko took a more active role in the company. However, a dispute arose between Williams and Ceko regarding whether Williams had an ownership interest in Duratel. Williams claimed a fifty percent ownership stake, while Ceko claimed he and the Ceko Trust were the sole owners. Ultimately, Williams and Ceko resolved their dispute by executing a written settlement agreement in December of 2011.[2] Under its terms, Williams relinquished his claims of ownership in Duratel, agreed to convey his patents to Duratel, and waived any causes of action he might have against Duratel. In exchange, Duratel would pay

---

[1]"Pultruded" means to draw resin-coated glass fibers through a heated die. Oxford English Dictionary, https://www.lexico.com/en/definition/pultruded (last visited July 26, 2021).

[2]The 2011 settlement agreement replaced a separate settlement agreement with different salient terms executed in 2010. The 2010 settlement agreement is not at issue in this appeal.

Williams $35,800. In addition, Duratel would pay Williams up to $2.5 million after Ceko recouped his equity in and loans to Duratel.[3] However, such payments were also conditioned upon the occurrence of any of the following events: (1) a membership distribution, (2) a change in control[4] resulting in a payment to Duratel greater than $1 million, or (3) Duratel earning an annual net profit greater than $1 million in any year. If a distribution occurred, Williams was to be paid twenty percent of the total amount distributed. If Duratel received over $1 million resulting from a change in control, Williams was to be paid twenty percent of the payment. And if Duratel earned over $1 million in net profits in any year, Williams was due twenty percent of that amount.

¶ 7    Also in 2011, John Cammett[5] contributed $500,000 to acquire a thirteen percent ownership interest in Duratel. The following year, Paul Saunders contributed $500,000 and acquired a twenty percent interest.

¶ 8    In November of 2012, Ceko formed Trident Industries as a Delaware limited liability company. Trident's members were Ceko, Cammett, and Saunders—the same owners of Duratel. As with Duratel, Ceko held a two-thirds interest in Trident and the others one-third (Cammett's thirteen percent plus Saunders' twenty percent). Eventually, the operating agreements for both Duratel and Trident were amended to require a seventy-five percent supermajority for key operating decisions, resulting in Ceko needing concurrence from one of the other members to affect any decision. Ceko remained the managing member of both Duratel and Trident.

¶ 9    Over time, Duratel's business operations shifted to Trident and Trident marketed and sold the same products as Duratel. Trident's website used the same photos and information as the

---

[3]The parties agree that Ceko recouped his equity and loans. This condition is not at issue.
[4]The trial court noted the agreement did not define what would constitute a "change in control" but determined from usage in reported Illinois state and federal cases that the phrase means an occurrence whereby the decision makers are supplanted or replaced, generally through a new party's acquisition of a majority share in the company.
[5]Cammett acted through his wholly-owned company, JC Investco, LLC.

Duratel website. And Duratel's web address redirected visitors to the Trident website until the Duratel website was shut down. Trident used the same office as Duratel and employed the same people. In 2014, Ceko, signing for both Duratel and Trident, executed a "Patent License Agreement" which allowed Trident to use Duratel's patents (acquired from Williams through the 2011 settlement agreement) in exchange for a $100 license fee for each item sold that used one of the patents. Ceko and other employees represented to customers that Duratel was now known as Trident. Likewise, Ceko informed the accountant engaged to prepare financial statements and tax returns for both companies that Duratel would be "phased out." In depositions, Ceko and other corporate designees stated that they transferred the company to Trident because they believed the name Trident was better for "marketing purposes."

¶ 10        After peaking in 2013, Duratel's revenue dwindled. Meanwhile, Trident's revenue grew precipitously over the next few years. By 2016, the utility products were being sold exclusively through Trident and Duratel's only revenue was the royalties received from Trident. In 2017, Trident ceased making royalty payments to Duratel altogether.

¶ 11        In 2016, Williams brought this action naming Ceko, Duratel, and Trident as defendants.[6] He claimed Ceko and Duratel breached the 2011 settlement agreement by transferring Duratel's business to Trident, thereby rendering it impossible for Duratel to ever meet the conditions necessary to pay Williams. Williams further claimed that Trident was liable as the successor and mere continuation of Duratel. The complaint also alleged Duratel and Trident made other payments to its members in lieu of distributions and incurred expenses to avoid achieving an annual profit that would trigger a payment obligation to Williams. In his cross-motion for summary judgment, Williams did not advance those allegations or otherwise argue that any of the agreement

_____

[6]Williams twice amended his complaint. We refer to his claims as stated in the second amended complaint filed August 7, 2018.

conditions could have occurred to date. Rather, he asserted the transfer from Duratel to Trident alone gave rise to the companies' obligation to pay him under the wrongful prevention doctrine. Williams reached a settlement with Ceko in 2019 and dismissed him from the suit.[7]

¶ 12       The remaining defendants, Duratel and Trident, filed their own cross-motion for summary judgment. They agreed that Trident was a mere continuation of Duratel but contended that, as a result, Trident "stands in Duratel's shoes with respect to the 2011 agreement." Accordingly, Trident represented that if it achieves any of the financial benchmarks delineated in the 2011 agreement, Trident would be obligated to pay Williams. Additionally, the defendants argued that none of the benchmarks had been achieved by Trident nor would have been achieved had the company remained Duratel.

¶ 13       As noted, the trial court found that the transfer from Duratel to Trident prevented Duratel from meeting the financial benchmarks set forth in the 2011 agreement. However, in reviewing Trident's financials, the court agreed that even if the company had remained Duratel, it would not have achieved the benchmarks. Therefore, applying Restatement of Contracts § 245 comment (b), the court found the defendants were not liable to Williams because the conditions for payment to him would not have occurred regardless of the transfer from Duratel to Trident. The court also found Trident's performance could not substitute for Duratel's because, in the court's view, Trident's status as successor to Duratel was limited to Duratel's potential liabilities. Based on those findings, the trial court granted summary judgment in favor of the defendants. Williams filed a notice of appeal from that order.

¶ 14                                    II. ANALYSIS

---

[7]Ceko was removed as the managing member of Duratel and Trident in 2017. Later, he reached an agreement with the other members whereby he agreed to pay $650,000 and relinquish his interest in the companies. As of 2019, Ceko and the Ceko Trust had no interest or role in Duratel or Trident.

¶ 15        The purpose of summary judgment is not to try a question of fact but simply to determine if one exists. *Forsythe v. Clark USA, Inc.*, 224 Ill. 2d 274, 280 (2007). "Summary judgment is proper where the pleadings, depositions, admissions, affidavits and exhibits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Petrovich v. Share Health Plan of Illinois, Inc.*, 188 Ill. 2d 17, 30–31 (1999). "A triable issue of fact exists where there is a dispute as to a material fact or where, although the facts are not in dispute, reasonable minds might differ in drawing inferences from those facts. Although summary judgment is an expeditious method of disposing of a lawsuit, it is a drastic remedy and should be allowed only when the right of the moving party is free and clear from doubt." *Id.* at 31. A circuit court's order granting summary judgment is reviewed *de novo*. *Gillespie v. Edmier*, 2020 IL 125262, ¶ 9. "On review, the appellate court reviews the judgment of the court and not the reasons given for that judgment [citation], and we may affirm the trial court based on any reason found in the record. [Citation]." *Mitchell v. Village of Barrington*, 2016 IL App (1st) 153094, ¶ 26.

¶ 16        As with his motion for summary judgment, Williams's theory for relief on appeal is premised solely upon the fact that Duratel's assets and business operation transferred to Trident. Williams claims that by transferring to Trident, a separate corporate entity, Duratel rendered fulfillment of the conditions for paying him practically impossible. That is, Duratel's revenue was reduced to relatively small royalty receipts, which eventually ceased, making it highly improbable that Duratel would ever earn over $1 million in annual net profits, receive over $1 million for a controlling stake, or distribute earnings to members. Williams does not claim that the conditions were met or that any action apart from the transfer to Trident make the defendants liable under the

agreement. Legally, Williams relies on the wrongful prevention doctrine to establish Duratel's liability.

¶ 17     "The 'wrongful prevention doctrine' is in the nature of an estoppel because it prohibits a party from profiting through his own wrongdoing." *Cummings v. Beaton & Assocs., Inc.*, 249 Ill. App. 3d 287, 307 (1992). Thus, the doctrine holds that "a party who prevents the fulfillment of a condition upon which his own liability rests [may] not defeat his liability by asserting the failure of the condition he himself rendered impossible." *Id.* at 306. The doctrine is an exception to the rule that a contract conditioned upon the happening or non-happening of an event has no effect and excuses performance if the condition fails. See *Grill v. Adams*, 123 Ill. App. 3d 913, 917 (1984). Under the wrongful prevention doctrine, "[i]f one party directly *causes* the condition to fail, however, the contract may be fully enforced against that party." [Emphasis in original] *Cummings*, 249 Ill. App. 3d at 306.

¶ 18     At the same time, Williams asserts Trident is responsible to pay him the full $2.5 million since Trident is a mere continuation of Duratel and, therefore, liable for Duratel's debts. For that proposition, Williams points to an exception to the general rule that a corporation that acquires the assets of another corporation is not liable for the debts or liabilities of the transferor corporation. See *Vernon v. Schuster*, 179 Ill. 2d 338, 344-45 (1997). An exception to successor non-liability applies "when the purchasing corporation is merely a continuation or reincarnation of the selling corporation." *Id.* at 346. That is, the "corporation [went] through a mere change in form without a significant change in substance." *Id.* (quoting *Baltimore Luggage Co. v. Holtzman*, 562 A.2d 1286, 1293 (Md. App. 1989)). The successor corporation "maintains the same or similar management and ownership, but merely wears different clothes." [Internal quotation marks omitted.] *Id.* Put differently, "the successor corporation is, in fact, the same corporate entity as the predecessor

corporation, simply wearing a 'new hat.' " *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 654 (5th Cir. 2002).

¶ 19        The defendants agree that Trident is the successor of Duratel and have represented before the trial and appellate courts that Trident would be liable for Duratel's obligations under the agreement. However, the defendants also assert that Trident stands in the shoes of Duratel and its obligation to pay Williams is likewise subject to the conditions stated in the agreement.

¶ 20        Williams counters that Trident is not a party to the agreement and cannot substitute itself for Duratel. Williams likens Duratel to a debtor who cannot assign or substitute another party to fulfill its obligation to a creditor without the creditor's consent. Since Williams does not consent to Trident's substitution, he, therefore, argues Trident cannot take Duratel's place in the agreement.

¶ 21        We do not agree with Williams's position. The terms of the 2011 agreement expressly provide for successors and assigns to substitute for the original parties. Section 20 of the 2011 agreement states, "This Agreement shall be binding on and shall inure to the benefit of the successors and assigns of the Parties."[8] See Black's Law Dictionary, 7th ed. 1997 ("inure" means to take effect). "A court's primary objective in construing a contract is to ascertain and give effect to the parties' intentions as expressed through that contract's language." *Walworth Invs.-LG, LLC v. Mu Sigma, Inc.*, 2021 IL App (1st) 191937, ¶ 31. The language Williams and Duratel agreed upon indicates the rights and obligations of their agreement would remain in effect if either party was succeeded by another entity. Thus, by operation of the agreement's express terms, a successor of either party would substitute for a predecessor. The agreement does not require the other party's consent. Accordingly, the financial benchmarks Williams agreed to as conditions for payment inured to the benefit of Duratel's successor: Trident.

---

[8]See page 13 of the 2011 Settlement Agreement. The numbering skips from section 12 to section 20. There are no sections 13 through 19.

¶ 22    Further, it is inconsistent for Williams to assert that Trident is a successor of Duratel for purposes of liability while simultaneously claiming Trident cannot be considered Duratel's successor as party to the agreement. If Trident is, in fact, the same corporate entity as Duratel, simply wearing a "new hat," as Williams alleges for liability, we fail to see why the same does not apply to the agreement. For corporations, a successor is " '[a] corporation that, through amalgamation, consolidation, or other assumption of interests, is vested with the rights and duties of an earlier corporation.' " *AA Sales & Associates, Inc. v. JT & T Products Corp.*, 24 Fed. Appx. 605, 607 (7th Cir. 2001) (quoting Black's Law Dictionary 1446 (7th ed. 1999)); *Toepper v. Brookwood Country Club Road Ass'n*, 204 Ill. App. 3d 479, 486 (1990). Thus, a corporation that acquires the assets and business operations of another corporation, as Trident did of Duratel, is a successor. Whether the predecessor's liabilities transfer to the successor is a separate inquiry. Irrespective of whether liabilities transfer, a successor corporation is still a successor.

¶ 23    Moreover, a successor corporation generally acquires the rights provided in the predecessor's contracts, not just liabilities. See 15 Fletcher, Cyclopedia of Corporations § 7090 (2020) ("The surviving or consolidated corporation generally succeeds to the rights and liabilities under contracts of the constituent or consolidating corporations without formal assignment."); *Unisource Worldwide, Inc. v. Carrara*, 244 F. Supp. 2d 977, 982 (C.D. Ill. 2003) (finding successor company could enforce restrictive covenants of predecessor company acquired through merger); *Hamer Holding Group. Inc. v. Elmore*, 202 Ill. App. 3d 994, 1004 (1990) (same where agreement provided it "shall be binding upon and shall inure to the benefit of *** successors"). Even where, as here, a corporation is a successor under common law, rather than through formal merger or reorganization, the successor maintains the predecessor's rights and obligations under its contracts (unless the contract is for a personal service or contains a provision to the contrary).

See *Robbins v. Physicians for Women's Health, LLC*, 90 A.3d 925, 931 (Conn. 2014) (finding covenant not to sue predecessor corporation inured to the benefit of successor corporation that was mere continuation of the predecessor). And a successor's liability on a contract is no greater than the predecessor's liability. "The liability of a successor corporation is derivative in nature and the successor may be held liable for the conduct of its predecessor only to the same extent as the predecessor." *Id.* at 930. "Simply being a successor in liability does not make a company liable." *Id.* at 930-31 (quoting *Herbolsheimer v. SMS Holding Co.*, 608 N.W.2d 487, 496 (Mich. App. 2000)). If the predecessor is not liable under a contract, neither is the successor.

¶ 24    In this instance, where a successor corporation is a mere continuation of a predecessor, the change is one of form, not substance. *Vernon*, 179 Ill. 2d at 346. In substance, Trident has the same owners, sells the same products, and uses the same patents as Duratel. The record does not disclose any substantive reason that Trident could not perform under the agreement the same as Duratel could. Accordingly, the change in form resulting from Duratel's transfer to Trident, did not prevent the financial benchmarks upon which payments to Williams were conditioned. This is bolstered by the fact Trident has represented before the trial court and this court, that it would be liable for payment to Williams if any of the financial benchmarks are achieved (and would be judicially estopped from asserting otherwise). The agreement did not require that Duratel remain Duratel. On the contrary, the agreement expressly bound and inured to successors and assigns. Nor did the agreement provide for acceleration of payment to Williams in the event Duratel was succeeded by another entity. Thus, the mere transfer from Duratel to Trident did not render the conditions impossible and result in wrongful prevention of their occurrence. Accordingly, we affirm the trial court's determination that Duratel is not liable to Williams under the 2011 agreement and, likewise, Trident, as Duratel's successor, is not liable.

¶ 25     We note that even after transferring business operations to Trident, the members did not dissolve Duratel or take other steps to formally consolidate the two companies. Rather, they maintained Duratel as a separate entity and produced separate financial statements and tax returns for Trident and Duratel. Also, instead of simply assigning Duratel's patents, Trident used the patents under a licensing agreement and paid royalties to Duratel for approximately three years. These facts give us some pause in treating the entities as the same. The defendants' conduct does not seem to fully accord with their assertion that the transfer was simply "rebranding" for marketing purposes. Indeed, maintaining Duratel on paper while conducting business as Trident could support an inference that this was done with the intent to frustrate Williams's ability to receive payments under the 2011 settlement agreement. Yet, that intent alone would not render the defendants' liable.

¶ 26                              III. CONCLUSION

¶ 27     Based on the foregoing, we find there is no genuine issue as to any material fact and the defendants are entitled to judgment as a matter of law. Accordingly, for the reasons explained above, we affirm the judgment of the trial court.

¶ 28     Affirmed.