2021 IL App (1st) 192154

No. 1-19-2154

Filed December 2, 2021

Fourth Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | No. 18 CR 14333 |
| v. | ) | |
| | ) | |
| DESHAWN RICHARDS, | ) | Honorable |
| | ) | Michael Joseph Kane |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE MARTIN delivered the judgment of the court, with opinion.
Presiding Justice Reyes and Justice Lampkin concurred in the judgment and opinion.

**OPINION**

¶ 1        Deshawn Richards appeals the sentence imposed following his conviction for unlawful use

of a weapon by a felon (UUWF). Richards argues the trial court applied an elevated sentencing

range by erroneously finding that Richards's prior conviction for second degree murder was a

"qualifying predicate offense" under a provision of the Safe Neighborhoods Reform Act (Pub. Act

100-3 (eff. Jan. 1, 2018)). We find that second degree murder is not a qualifying predicate offense

under that provision and remand for resentencing.

¶ 2                                I. BACKGROUND

¶ 3        In a bench trial, the State presented evidence that Richards possessed a Sig Sauer 9-

millimeter handgun on September 5, 2018. Two Chicago police officers testified that they

observed Richards "toss a firearm underneath a bush" while he was standing near the intersection of West 121st Street and La Salle Street in Chicago. Moments later, the officers detained Richards and recovered the firearm from beneath the bush. The State also introduced a certified copy of Richards's conviction for a 2011 second degree murder for which Richards pled guilty in 2014. Richards denied that he possessed a firearm at any time during the incident and claimed that the firearm the officers referred to in their testimony was not his and he had never seen it before. The trial court found Richards guilty of UUWF.

¶ 4        At sentencing, the court stated that Richards was subject to a prison term of 7 to 14 years based on statutory sentencing guidelines established in the Safe Neighborhoods Reform Act. Those guidelines elevated the sentence for persons convicted of possessing a firearm after being convicted of a "qualifying predicate offense." See 730 ILCS 5/5-4.5-110 (West 2018). The State agreed that Richards was subject to the elevated sentencing guidelines and further argued that the court should impose a prison term above the minimum due to Richards's prior second degree murder conviction and two juvenile adjudications of delinquency involving violence.

¶ 5        Defense counsel did not object to the court's finding that Richards was subject to the elevated sentencing guidelines. Nor did counsel argue that the court should depart from those guidelines, which the statute permits if the court finds a downward departure is warranted and follows certain procedures. See *id.* § 5-4.5-110(c)(1), (d). Counsel, however, did offer arguments in mitigation, which included that Richards maintained employment and had completed drug treatment. Counsel urged the court to impose "the minimum."

¶ 6        The court noted that it found some things "redeemable" about Richards, but the court found his second degree murder conviction significant. Richards attempted to explain, "it was self-defense." The court stated, "the bottom line is you were found guilty of some kind of killing, ***

which means you should not have a gun in your possession under any circumstances and that's why you fit into the category that was effective January of 2018." The court then sentenced Richards to eight years' imprisonment.

¶ 7 After announcing the sentence, defense counsel requested leave to file a motion to reconsider the sentence. Along with the oral request, counsel submitted a written motion. The motion included the typed assertion "[t]he State failed to prove eligibility for enhanced penalty or extended term." However, handwritten marks appeared over those words and counsel asked that the sentence be stricken. Counsel did not offer further argument. The court denied the motion to reconsider the sentence. This appeal followed.

¶ 8                                                    II. ANALYSIS

¶ 9 On appeal, Richards claims that the trial court erred in finding him subject to the elevated sentencing guidelines as second degree murder is not a qualifying predicate offense under the sentencing guidelines for individuals with prior felony convictions. Alternatively, Richards claims that his trial counsel was ineffective for failing to raise this argument before the trial court or, if subject to the guidelines, failing to argue for a downward departure. The State counters that Richards forfeited his challenge to the sentence by failing to raise the issue before the trial court, precluding our review. The State alternatively contends second degree murder is a qualifying predicate offense for the elevated sentencing guidelines and, therefore, Richards cannot show the requisite reasonable probability that he would have received a lower sentence to establish ineffective assistance.

¶ 10 Richards acknowledges that he did not raise whether his second degree murder conviction was a qualifying predicate offense before the trial court, but he requests we review the issue as plain error.

¶ 11       Generally, to preserve a sentencing issue for appeal, a defendant must raise the issue in the trial court, including through a written motion to reconsider the sentence. *People v. Woods*, 2018 IL App (1st) 153323, ¶ 24. But an unpreserved claim of sentencing error may be reviewed under plain error analysis. *Id.* ¶ 25. For this analysis, the defendant must first show that a clear or obvious error occurred. *Id.* Then, the defendant must show that either (1) the evidence at the sentencing hearing was closely balanced or (2) the error was so egregious as to deny the defendant a fair sentencing hearing. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). For either proposition, the defendant bears the burden of persuasion. *Id.*

¶ 12       Here, we first consider whether an error occurred. Richards claims the court erred by finding that second degree murder constitutes a "qualifying predicate offense" for purposes of the elevated sentencing statute for individuals convicted of UUWF. Thus, we are called upon to interpret that statute (730 ILCS 5/5-4.5-110 (West 2018)).

¶ 13       The interpretation of a statute is a question of law, which we review *de novo*. *People v. Manning*, 2018 IL 122081, ¶ 16. When interpreting a statute, our primary objective is to discern and give effect to the legislature's intent. *People v. Casler*, 2020 IL 125117, ¶ 24. The language of the statute, given its plain and ordinary meaning, is the most reliable indication of legislative intent. *Id.* Statutes should be read as a whole, with words and phrases construed in light of other relevant provisions, not read in isolation. *Id.* Courts "may consider the reason for the law, the problems sought to be remedied, the purpose to be achieved, and the consequences of construing the statute one way or another." *Id.* Courts may also consider the circumstances that existed at the time the statute was enacted. *People v. Johnson*, 2017 IL 120310, ¶ 15.

¶ 14       The relevant provision of the sentencing guideline statute at issue states:

"When a person is convicted of unlawful use or possession of a weapon by a felon [UUWF], when the weapon is a firearm, and that person has been previously convicted of a qualifying predicate offense, the person shall be sentenced to a term of imprisonment within the sentencing range of not less than 7 years and not more than 14 years, unless the court finds that a departure from the sentencing guidelines *** is warranted ***." 730 ILCS 5/5-4.5-110(c)(1) (West 2018).[1]

Unless this provision applies, a conviction for UUWF is generally a Class 3 felony with a sentencing range of 2 to 10 years' imprisonment. 720 ILCS 5/24-1.1(e) (West 2018). For a person who has been previously convicted of a forcible felony,[2] like Richards, UUWF is a Class 2 felony with a penalty of 3 to 14 years in prison. Thus, the practical consequence for a person previously convicted of a qualifying predicate offense under this statute is a greater minimum prison term of seven years.

¶ 15        The statute defines "qualifying predicate offense" as any of the 26 offenses "under the Criminal Code of 2012" listed in the statute. See 730 ILCS 5/5-4.5-110(a)(A)-(Z) (West 2018). Second degree murder is not among the 26 listed offenses. *Id.* The State contends that the legislature intended second degree murder to be a qualifying predicate offense and indicated so by adding the words "or similar offense" following first degree murder, which does appear in the list. *Id.* § 5-4.5-110(a)(C) ("first degree murder under Section 9-1 or similar offense under the Criminal Code of 1961"). In other words, the State argues second degree murder is a similar offense to first degree murder and, therefore, second degree murder is a qualifying predicate offense under the statute.

---

[1]These sentencing guidelines apply only to offenses committed between January 1, 2018, and December 31, 2022. 730 ILCS 5/5-4.5-110(c)(3) (West 2018).

[2]Second degree murder is a forcible felony. 720 ILCS 5/2-8 (West 2018).

¶ 16    Richards argues that the absence of second degree murder from the express list signifies that the legislature intended for second degree murder not to be a qualifying predicate offense. Alternatively, he contends that various canons of statutory interpretation previously applied by Illinois courts preclude us from reading second degree murder into the statute when the legislature failed to include second degree murder in the list of qualifying predicate offenses.

¶ 17    Second degree murder is a similar offense to first degree murder in several respects. Both involve a killing for which the defendant is responsible. The two offenses require proof of the same elements and mental state. *People v. Staake*, 2017 IL 121755, ¶ 40. Second degree murder is not a lesser included offense of first degree murder but a lesser mitigated form. *People v. Jeffries*, 164 Ill. 2d 104, 122 (1995). Only the presence of a mitigating circumstance distinguishes second degree murder from first degree murder: either that the defendant acted under an unreasonable belief in self-defense or that the defendant acted under a sudden and intense passion resulting from serious provocation. *People v. Lopez*, 166 Ill. 2d 441, 447 (1995); 720 ILCS 5/9-2(a)(1)-(2) (West 2012).

¶ 18    The State maintains that second degree murder is a qualifying predicate offense simply because it is similar to first degree murder. But that conclusion follows from reading the words "first degree murder *** or similar offense" in isolation. As we noted, our consideration should not be so limited. Reading the statute as a whole, we observe that the phrase "or similar offense under the Criminal Code of 1961" follows each of the 26 listed offenses. The phrase is not unique to first degree murder. Further, each of the 26 listed offenses is first identified by name and section number "under the Criminal Code of 2012." 730 ILCS 5/5-4.5-110(a) (West 2018) (providing definition of "Qualifying predicate offense"). Thus, a plain reading of the whole statute reveals that the legislature found it necessary to refer to the Criminal Codes of both 2012 and 1961 when listing which offenses are "qualifying predicate offense[s]."

¶ 19      Reference to both Criminal Codes is significant considering the circumstances at the time of the Safe Neighborhoods Reform Act enactment and its purpose. The Criminal Codes of 1961 and 2012 represent our legislature's last two comprehensive revisions of the codified criminal laws of Illinois. From January 1, 1962, until January 1, 2013—the effective date of the Criminal Code of 2012—the criminal laws of Illinois were titled the Criminal Code of 1961. 1961 Ill. Laws 1983; Pub. Act 97-1108, § 10-5 (eff. Jan. 1, 2013). The legislature amended the criminal laws from time to time over that period, but as amended, they remained known as the Criminal Code of 1961. As a result, any criminal offense that occurred between January 1, 1962, and January 1, 2013, was an offense "under the Criminal Code of 1961." However, numerous piecemeal amendments resulted in redundancy, confusion, and lack of organization. See John Decker, *The Mission of the Criminal Law Edit, Alignment, and Reform Commission (CLEAR): An Introductory Commentary*, 41 J. Marshall L. Rev. 611, 616 (2008). These problems, among other issues, led to efforts to revise the Illinois Criminal Code. *Id.* at 617-18. Through a series of enactments, the legislature revised the criminal laws and renamed them the Criminal Code of 2012. Pub. Act 97-1108, § 10-5 (eff. Jan. 1, 2013) (amending 720 ILCS 5/1-1). In revising the Criminal Code of 1961, the legislature removed redundant provisions, renumbered provisions for better organization, added missing mental states for certain offenses, and updated antiquated or unclear language, among other changes. See Pub. Act 97-1108 (eff. Jan. 1, 2013); see also Decker, *supra* (describing problems with the Criminal Code of 1961 as amended and objectives of revision). Due to the revised and renamed Criminal Code, any criminal offense committed on or after January 1, 2013, is an offense "under the Criminal Code of 2012."

¶ 20      Following the title change from "Criminal Code of 1961" to "Criminal Code of 2012," the legislature clarified citations and cross references to the Criminal Code throughout the Illinois

Compiled Statutes. See Pub. Act 97-1150, § 1 (eff. Jan. 25, 2013) ("The purpose of this Act is to clarify the citations to offenses under the Criminal Code of 2012 and to previous citations under the Criminal Code of 1961 to aid law enforcement, prosecutors, defense attorneys, criminal defendants, the courts, and the public in the administration and understanding of the criminal law.").

¶ 21    Additionally, the legislature amended the Statute on Statutes to provide that any reference to the Criminal Code or Criminal Code of 1961 in any Act means the Criminal Code of 2012, "unless the context clearly requires otherwise." Pub. Act 97-1150, § 5 (eff. Jan. 25, 2013); 5 ILCS 70/1.39 (West 2018). The context of the statute at issue here requires otherwise. That is, "or similar offense under the Criminal Code of 1961" cannot refer to the Criminal Code of 2012 because the Criminal Code of 2012 is already referenced expressly. Otherwise, the phrase would be redundant and superfluous. See *Mitchell v. Village of Barrington*, 2016 IL App (1st) 153094, ¶ 34 ("We cannot interpret a statute to render a term or phrase superfluous.").

¶ 22    Rather, by referencing both the Criminal Code of 2012 and the Criminal Code of 1961, we find that the legislature simply intended to apply the elevated sentencing guidelines based on prior convictions that may have occurred both before and after January 1, 2013. A sentencing statute based on prior convictions necessarily looks to the past. In Illinois's recent past, as we explained, the criminal laws were revised and renamed the Criminal Code of 2012. But only including prior convictions for offenses under the Criminal Code of 2012 would result in the statute only applying to offenders whose prior offenses occurred on or after January 1, 2013.

¶ 23    To extend the reach of the statute to encompass convictions for the same offenses as those listed under the Criminal Code of 2012 but occurring before January 1, 2013, the legislature needed to reference those offenses under the Criminal Code of 1961. But doing so is not a simple task.

The Criminal Code of 1961, as it was amended from time to time, did not necessarily contain an exact analog for the listed offenses as they appear in the Criminal Code of 2012. Under the Criminal Code of 1961, an offense may have had substantially similar elements to an offense under the Criminal Code of 2012, but differ in name, number, or language due to reorganization, consolidation, or other amendment that occurred at some point. For instance, the offense of rape was repealed and subsumed into other offenses created under the Criminal Sexual Assault Act (Pub. Act 83-1067 (eff. July 1, 1984); *In re Detention of Lieberman*, 201 Ill. 2d 300, 313 (2002)). Accordingly, rape would constitute a similar offense under the Criminal Code of 1961 to aggravated criminal sexual assault under the Criminal Code of 2012. Thus, by using the words "or similar offense under the Criminal Code of 1961," we find the legislature intended to account for the differences between current offenses and comparable former offenses that resulted from revisions and amendments over time. This is the most reasonable understanding of "similar offense" between the two Codes and is consistent with the statute's purpose of imposing greater punishment for firearm possession on those with certain prior convictions.

¶ 24       Understanding that a comprehensive revision of the Criminal Code occurred, it is not reasonable to conclude that "first degree murder under Section 9-1 [under the Criminal Code of 2012] or similar offense under the Criminal Code of 1961" includes second degree murder. The phrase "or similar offense under the Criminal Code of 1961" simply accounts for the variances that resulted from revisions to the first degree murder statute that occurred over time under the Criminal Code of 1961. For example, the name of the offense was just "murder" until 1987. Pub. Act 84-1450 (eff. Jan. 5, 1987); *In re Detention of Welsh*, 393 Ill. App. 3d 431, 447 (2009). Second degree murder was always separate from murder or first degree murder under the Criminal Code of 1961. Similarly, voluntary manslaughter, which was incorporated into the second degree murder

statute, was a separate offense. Also, under the State's interpretation, elevated sentencing would apply only to individuals who committed second degree murder before January 1, 2013, since second degree murder is only a similar offense under the Criminal Code of 1961. The statute contains no reference to second degree murder under the Criminal Code of 2012. Since there is no reasonable basis to distinguish between second degree murders committed before or after January 1, 2013, this would be an absurd result. See *People v. Burchell*, 2018 IL App (5th) 170079, ¶ 8 ("a statute should be construed so as to avoid an absurd result"). For these reasons, we find that second degree murder is not a "similar offense under the Criminal Code of 1961" to first degree murder under the Code of 2012 for purposes of the elevated sentencing statute at issue in this case.

¶ 25    In addition, Illinois courts have long applied the rule that "where a statute lists the things to which it refers, it may be inferred that all omissions therefrom should be understood as exclusions." *In re Devontay A.*, 2013 IL App (2d) 120347, ¶ 28; see also *Metzger v. DaRosa*, 209 Ill. 2d 30, 44 (2004) ("when people say one thing they do not mean something else").[3] The legislature omitted second degree murder from the list of qualifying predicate offenses. So, we may infer that the legislature intended to exclude second degree murder as a qualifying predicate offense. This is a rule of statutory interpretation, not of law, and it may be overcome by a strong indication of contrary legislative intent. *Baker v. Miller*, 159 Ill. 2d 249, 260 (1994). However, we do not find a strong legislative intent to overcome the inference that second degree murder's omission from the list of qualifying predicate offenses means second degree murder is excluded as such.

---

[3]This canon is often cited using the Latin maxim *expressio unius est exclusio alterius*, which means " 'the expression of one thing is the exclusion of another.' " *Metzger*, 209 Ill. 2d at 44 (quoting Black's Law Dictionary 581 (6th ed. 1990)).

¶ 26        None of the referenced laws—the statute at issue, other provisions of the Safe Neighborhoods Reform Act, or other provisions of the Criminal Code—give a strong indication of contrary legislative intent to include second degree murder as a qualifying predicate offense. Instead, the State relies on statements made in support of the bill that became the Safe Neighborhoods Reform Act as indicative of the legislature's intent to include second degree murder as a qualifying predicate offense. During Senate and House debates, legislators discussed the bill's "new sentencing structure for second-time gun offenders." 100th Ill. Gen. Assem., House Proceedings, May 29, 2017, at 92 (statements of Representative Durkin). Supporters of the bill asserted that many people charged with violent offenses had prior convictions for firearm offenses. *Id.* at 117-18. The supporters posited that people who possessed firearms after such convictions were responsible for most violent crime, especially in the City of Chicago. *Id.* Thus, in the bill supporters' view, increasing the penalty for persons found to possess firearms with prior convictions would reduce violent crime. *Id.* at 102-03 (statements of Representative Harris).

¶ 27        Courts may consider relevant statements by legislators concerning the nature and effect of the proposed law. *Sulser v. Country Mutual Insurance Co.*, 147 Ill. 2d 548, 555 (1992). The statements of legislators supporting the Safe Neighborhoods Reform Act indicate that its elevated sentencing guidelines are aimed at "second-time gun offender[s]," and persons who possess a firearm after being convicted of second degree murder might be such an offender. But, "[n]o rule of construction authorizes [courts] to declare that the legislature did not mean what the plain language of the statute imports, nor may we rewrite a statute to add provisions or limitations the legislature did not include." *People v. Smith*, 2016 IL 119659, ¶ 28. Likewise, "courts may not rewrite statutes to make them consistent with their own ideas of orderliness and public policy." *Lawrence v. Regent Realty Group, Inc.*, 197 Ill. 2d 1, 11 (2001). These principles preclude us from

reading second degree murder as a qualifying predicate offense into the statute when the legislature plainly omitted it.

¶ 28       As we explained, the plain language of the statute indicates the legislature intended to impose the elevated sentencing guidelines on offenders with prior convictions for any of the listed offenses, whether the prior offense was committed under the Criminal Code of 1961 or the Criminal Code of 2012. The legislature listed 26 specific offenses, not classes of offenses such as forcible felonies, as it has for other offenses. See, *e.g.*, 730 ILCS 5/5-4.5-95(b) (West 2018) (enhancing penalty for Class 1 and Class 2 forcible felonies to Class X range when defendant has two prior Class 2 or greater forcible felony convictions); 720 ILCS 5/24-1.7(a)(1) (West 2018) (making convictions for forcible felonies an element of armed habitual criminal). Nor did the legislature follow the list with a general, catch-all term for "other" offenses, which we could interpret to include second degree murder. See *People v. Davis*, 199 Ill. 2d 130, 138 (2002) ("when a statutory clause specifically describes several classes of persons or things and then includes 'other persons or things,' the word 'other' is interpreted as meaning 'other such like' ").

¶ 29       We also observe that the legislature expressly included attempted first degree murder as a qualifying predicate offense. 730 ILCS 5/5-4.5-110(a)(D) (West 2018). Reading the words "first degree murder *** or similar offense" in isolation, attempted first degree murder is a similar offense to first degree murder just as the State argues second degree murder is a similar offense to first degree murder. Yet, there would be no need to list attempted first degree murder separately if it was already included as a "similar offense" to first degree murder. The legislature's separate express listing of attempted first degree murder indicates its understanding that attempted first degree murder is not a "similar offense" to first degree murder as that phrase is used in the statute. Thus, the express inclusion of attempted first degree murder, along with the omission of second

degree murder, further bolsters the conclusion that second degree murder is excluded from qualifying predicate offenses.

¶ 30    In sum, we find that second degree murder is not a qualifying predicate offense to render a person convicted of UUWF subject to the elevated sentencing guidelines created by the Safe Neighborhoods Reform Act. Consequently, the trial court erroneously found that Richards was subject to the elevated sentencing range.

¶ 31    Having found that an error occurred, we proceed to the second prong of plain error analysis. This court has found that a trial court's misapplication of law to determine the applicable sentencing range is plain error because it affects the defendant's fundamental right to liberty. See *People v. Smith*, 2016 IL App (1st) 140496, ¶ 15; see also *People v. Mitok*, 2018 IL App (3d) 160743, ¶¶ 12-13 (finding a trial court's reliance on an improper factor to elevate the sentencing range was plain error). Because that occurred here, we vacate the sentence and remand for resentencing. See *Smith*, 2016 IL App (1st) 140496, ¶ 15. Such relief is required, even though Richards's eight-year term falls within the correct range. See *People v. Hall*, 2014 IL App (1st) 122868, ¶ 15 ("even when a sentence imposed under an incorrect sentencing range fits within the correct range, the original sentence must be vacated because the trial court relied on the wrong sentencing range when imposing sentence"). Since we found that Richards is entitled to relief on his first argument, we need not address his alternative argument that his counsel was ineffective.

¶ 32                                    III. CONCLUSION

¶ 33    For these reasons, we vacate the sentence imposed and remand for resentencing.

¶ 34    Vacated and remanded.

---

**No. 1-19-2154**

---

| | |
|---|---|
| **Cite as:** | *People v. Richards*, 2021 IL App (1st) 192154 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 18-CR-14333; the Hon. Michael Joseph Kane, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Ian R. Jackson, of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (John E. Nowak and Marci Jacobs, Assistant State's Attorneys, of counsel), for the People. |

---