2023 IL App (1st) 220385-U

No. 1-22-0385

Order filed October 24, 2023

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 21 CR 3152 |
| | ) | |
| MAURICE RUSSELL, | ) | Honorable |
| | ) | Joseph M. Claps, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE COBBS delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

**ORDER**

¶ 1     *Held*:  Defendant's conviction for unlawful use or possession of a weapon by a felon is affirmed where the evidence proved that he had constructive possession of the firearm protruding from underneath the passenger's seat of the vehicle in which he was seated; and the cause is remanded with directions.

¶ 2     Following a bench trial, defendant Maurice Russell was convicted of unlawful use or possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2020)) and sentenced to eight and a half years' imprisonment. The charges stemmed from an incident in which police recovered a

loaded firearm that was protruding from beneath defendant's seat in a vehicle. On appeal, defendant contends that the State failed to prove him guilty beyond a reasonable doubt because it failed to establish that he had constructive possession of the firearm. Defendant also contends that his eight-and-a-half-year sentence is excessive. For the reasons that follow, we affirm defendant's conviction but remand with directions as to his claim of sentencing error.

¶ 3                                    I. BACKGROUND

¶ 4      Defendant was charged with five counts of aggravated unlawful use of a weapon (AUUW) and one count of unlawful use or possession of a weapon by a felon (UUWF). At trial, Chicago police sergeant Craig Landrum testified that at about 11:41 p.m. on July 28, 2020, he responded to a call in the 200 block of West 110th Street regarding a person who refused to cooperate with other police officers. When Landrum arrived at the scene, he observed defendant sitting in the front passenger's seat of a gray SUV with the window "cracked" open. A woman was sitting in the driver's seat and the vehicle's engine was running. Two small children under the age of five and a baby were in the back seat.

¶ 5      Landrum approached the SUV and spoke to defendant. While talking with defendant, Landrum observed a firearm protruding "about a foot" from underneath the front passenger's seat where defendant was seated. Landrum tried to convince defendant to exit the vehicle. Landrum did not tell anyone else that he observed a firearm at that time because he was concerned that doing so could jeopardize the safety of the officers and the occupants of the vehicle. Landrum wanted to secure the firearm and render it safe.

¶ 6      After about five minutes, defendant eventually unlocked the vehicle's door. Landrum escorted defendant out of the vehicle and to one of the other officers on the scene. Landrum then

recovered the firearm from underneath the passenger's seat. The firearm was a semi-automatic handgun with an extended magazine loaded with live rounds. Landrum rendered the firearm safe and ordered the other officers to arrest defendant. In court, Landrum identified the firearm and extended magazine he recovered from under the passenger's seat.

¶ 7    On cross-examination, Landrum explained that he was not wearing a body camera on the night of defendant's arrest because he was new to the district and had not yet been assigned a camera. During their conversation, Landrum asked defendant to roll the vehicle's window down further and defendant complied. Defendant did not comply with Landrum's requests to exit the vehicle. When defendant unlocked the vehicle's door, Landrum opened the door and "grabbed" defendant by his shirt. Defendant then complied and exited the vehicle. Defendant did not resist arrest when being handcuffed. Landrum did not know if the weapon was sent for forensic testing. Landrum acknowledged that defendant did not move his hands underneath the passenger's seat.

¶ 8    The State presented a stipulation that defendant had a prior felony conviction.

¶ 9    The defense rested without presenting evidence.

¶ 10    In closing, defense counsel argued that the State failed to prove defendant had constructive possession of the firearm where there was no evidence that the vehicle belonged to defendant or that his fingerprints or DNA were found on the firearm. The State replied that it did not need fingerprint or DNA evidence to prove defendant guilty. The State argued that the evidence that a portion of the firearm, about 12 inches long, was protruding from underneath the seat in which defendant was seated proved the firearm was immediately accessible to him.

¶ 11    The trial court found that it was "clear" from Landrum's testimony that defendant did not want to exit the vehicle, which "could be because he knew the gun was in his seat." The court also

stated that it considered defendant's behavior, specifically his refusal to obey the police officers' directions, in making its ruling. The court concluded, "[t]here's no question in my mind that this particular evidence establishes his guilt beyond a reasonable doubt."

¶ 12    However, the trial court further noted that the State presented no evidence regarding certain elements of the AUUW charges. Specifically, there was no evidence as to whether defendant had a concealed carry license or a firearm owner's identification card, or that defendant committed an assault. Consequently, the trial court found defendant guilty of one count of UUWF, but not guilty of AUUW.

¶ 13    In his posttrial motion seeking a new trial, defendant argued that the State failed to prove he had constructive possession of the firearm where there was no scientific evidence that he ever touched the firearm, no testimony that anyone observed him touch the firearm, and no evidence that he owned or leased the vehicle in which the firearm was found. The trial court denied defendant's motion and proceeded with sentencing.

¶ 14    At sentencing, the trial court and the parties discussed defendant's criminal history as reflected in the presentence investigation report (PSI). The PSI showed that defendant had a 2017 conviction for aggravated fleeing and eluding a peace officer (a Class 4 felony), as well as a 2017 conviction for possession of a stolen motor vehicle and a 2019 conviction for aggravated battery to a peace officer (both Class 2 felonies).

¶ 15    The State also submitted in aggravation that defendant had a pending charge of escape. The State proffered that a bond forfeiture was issued for defendant in connection with the present case when he failed to appear in court. Officers went to defendant's home and discovered that he was

not there, despite being on electronic monitoring at the time. The State argued that defendant's criminal history and unwillingness to follow the law warranted an extended sentence for UUFW.

¶ 16    In mitigation, defense counsel informed the court that defendant has two children and was involved in their lives prior to his incarceration. While in jail, defendant remained in contact with his children through video calls. Defendant has a close relationship with his mother, who cares about him and will be involved in his life when he is released from prison. Counsel also pointed out that the PSI showed defendant's father was not around and defendant did not have a father figure while growing up. The only time defendant spent with his father was a brief period during defendant's freshman year of high school. Counsel requested that, based on that information, and the mitigation reflected in the PSI, the court not impose an extended sentence.

¶ 17    In allocution, defendant apologized "for everything" and "[f]or what happened." He stated he was thankful for his family and support system.

¶ 18    The trial court expressly stated that it considered the information contained in the PSI and the sentencing factors in aggravation and mitigation. The court noted that the State was using the escape offense as aggravation. The court stated that, based on defendant's background and the aggravation, it would grant the State's request to impose an extended sentence in the range of 5 to 10 years. The court told defendant that it reduced his sentence from what it had initially planned to impose because defendant apologized for what happened. The court stated that it also considered that defendant's term of mandatory supervised release was only up to 12 months. The court then sentenced defendant to eight and a half years' imprisonment.

¶ 19    Following sentencing, the court advised defendant of his appeal rights. Specifically, the court admonished defendant that he had the right to appeal within 30 days and that if he could not

afford an attorney, one would be provided, as well as a free transcript. Finally, the court stated, "[i]f you fail to do that, all your issues of claims of error not raised will be lost forever, waived." Immediately thereafter, defense counsel filed a notice of appeal and the Office of the State Appellate Defender was appointed by the court to represent defendant. Defendant did not file a post sentencing motion.

¶ 20                              II. ANALYSIS

¶ 21                       A. Constructive Possession

¶ 22    On appeal, defendant first contends that the State failed to prove him guilty beyond a reasonable doubt because it failed to establish that he had constructive possession of the firearm protruding from underneath the passenger's seat in which he was seated. Defendant argues that there was no evidence that he had any knowledge that the firearm was under the seat. Defendant points out there was no evidence he owned the vehicle, which was being driven by someone else. He further argues that there was no evidence he ever touched the firearm, reached down or made any movements towards the firearm, glanced towards the firearm, or that the firearm was visible to him from his vantage point. Defendant notes there was no physical evidence, such as fingerprints, linking him to the firearm, and no confession from him. Defendant asserts that the mere fact that the firearm was under the seat is not proof he knew it was there.

¶ 23    The State responds that the evidence that the firearm was not concealed but, instead, was in plain view visibly protruding a foot from underneath the seat showed defendant had knowledge that the firearm was there and that it was easily accessible to him. The State notes that the trial court found that defendant's failure to comply with the officers' requests to exit the vehicle could have been because he was aware the firearm was under the seat. The State also asserts that it is

irrelevant that Landrum did not observe defendant touch the firearm because physical touching is not required.

¶ 24    When a defendant claims the evidence is insufficient to sustain his conviction, this court must determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the elements of the offense proved beyond a reasonable doubt. *People v. McLaurin*, 2020 IL 124563, ¶ 22 (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard applies whether the evidence is direct or circumstantial and does not allow this court to substitute its judgment for that of the fact finder on issues involving witness credibility and the weight of the evidence. *People v. Jackson*, 232 Ill. 2d 246, 280-81 (2009). This court will not retry the defendant. *People v. Jones*, 2023 IL 127810, ¶ 28. On review, we must draw all reasonable inferences from the evidence in favor of the State. *Id.*

¶ 25    In a bench trial, the trial court is responsible for determining the credibility of the witnesses, weighing the evidence, resolving conflicts in the evidence, and drawing reasonable inferences therefrom. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). In weighing the evidence, the trial court is not required to disregard the inferences that flow naturally from that evidence, nor must it search for any possible explanation consistent with innocence and raise it to the level of reasonable doubt. *Jackson*, 232 Ill. 2d at 281. We will not reverse a criminal conviction based upon insufficient evidence unless the evidence is so improbable or unsatisfactory that there is reasonable doubt as to the defendant's guilt. *Jones*, 2023 IL 127810, ¶ 28.

¶ 26    To prove defendant guilty of UUWF as charged in this case, the State was required to show that he knowingly possessed on or about his person any firearm after having been previously convicted of the offense of possession of a stolen motor vehicle. 720 ILCS 5/24-1.1(a) (West

2020). Defendant does not challenge the proof of his prior conviction, to which he stipulated at trial. Thus, the only element in dispute is whether defendant knowingly possessed a firearm.

¶ 27    Possession of a firearm may be either actual or constructive. *Jones*, 2023 IL 127810, ¶ 30. Where, as here, the firearm was found near defendant, rather than on his person, the State had to prove he had constructive possession of the firearm. *Id.* Constructive possession exists where a defendant had knowledge of the presence of the firearm and exercised immediate and exclusive control over the location where the weapon was found. *Id.*

¶ 28    Whether defendant knowingly possessed the firearm and had control over its location were questions of fact for the trier of fact. *Id.* ¶ 27. Constructive possession may be inferred from the evidence and is often established by entirely circumstantial evidence. *People v. McCarter*, 339 Ill. App. 3d 876, 879 (2003). The trier of fact is entitled to rely on reasonable inferences of knowledge and possession, absent other factors that might raise a reasonable doubt of defendant's guilt. *People v. Spencer*, 2012 IL App (1st) 102094, ¶ 17.

¶ 29    Control is established when a defendant has the capability and intent to maintain dominion and control over the firearm. *Id.* Proof that a defendant had control over the location where the firearm was found gives rise to an inference of his knowledge and possession of that weapon. *Jones*, 2023 IL 127810, ¶ 30. Knowledge may be demonstrated by evidence of a defendant's declarations, acts, or conduct from which one can infer that he knew the contraband existed in the place where it was found. *Spencer*, 2012 IL App (1st) 102094, ¶ 17. The defendant's proximity to the firearm is another factor courts have found relevant when determining whether the defendant had constructive possession of a firearm. *People v. Wise*, 2021 IL 125392, ¶ 29.

¶ 30    Here, when viewed in the light most favorable to the State, the evidence was sufficient for the trial court to find that defendant had constructive possession of the firearm. Landrum testified that the firearm was protruding "about a foot" from underneath the passenger's seat where defendant was seated. This evidence showed that the firearm was not concealed under the seat or only slightly visible such that defendant would not have seen the firearm and been unaware that it was there. Instead, a significant 12-inch portion of the firearm was exposed and clearly visible to Landrum as he stood next to the vehicle talking with defendant. From this evidence, the trial court could reasonably infer that defendant had both control over the location of the firearm and knowledge that the weapon was there. *Jones*, 2023 IL 127810, ¶ 30; *Wise*, 2021 IL 125392, ¶ 29.

¶ 31    Moreover, the trial court found that defendant's behavior, specifically his refusal to obey the police officers' directions to exit the vehicle, demonstrated that "he knew the gun was in his seat." The record shows that the trial court inferred from defendant's conduct that defendant knew the firearm was under his seat. *Spencer*, 2012 IL App (1st) 102094, ¶ 18 (the defendant's attempt to flee from a room suggested that he knew about the firearm). Based on this record, we conclude that the trial court reasonably found that defendant had constructive possession of the firearm. *Jones*, 2023 IL 127810, ¶ 30.

¶ 32    Defendant's assertion that the evidence did not show he had constructive possession of the firearm where there was no evidence he owned the vehicle, which was being driven by someone else, is unavailing. A person's status as the owner or driver of a vehicle does not mean that person possesses everything in the passenger's area when there is a passenger present, such as defendant in this case, who may, in fact, be the person in possession of the contraband. *Wise*, 2021 IL 125392, ¶ 28.

¶ 33 In addition, it is of no import that there was no physical evidence, such as fingerprints, linking defendant to the firearm. It is well-settled that the testimony of a single witness is sufficient to sustain a conviction where it is positive and credible, even when it is contradicted by the defendant. *People v. Gray*, 2017 IL 120958, ¶ 36. Thus, this court has repeatedly found that where a witness's testimony is credible, the State is not required to present additional physical evidence to link a defendant to a firearm. *People v. Campbell*, 2019 IL App (1st) 161640, ¶ 33. Here, the trial court clearly found Landrum's testimony credible and, therefore, it was not necessary for the State to present any physical or forensic evidence linking defendant to the firearm. Landrum's testimony alone was sufficient to establish defendant had constructive possession of the weapon.

¶ 34                                B. Excessive Sentence

¶ 35 Defendant next contends his eight-and-a-half-year prison sentence is excessive because it is more than four times the minimum term he could have received. Defendant argues that his conviction was not for a violent offense, and although he has several prior convictions, there was no evidence any of them involved violence. Defendant further argues that he was only 21 years old at the time of the offense and that his conduct was rooted in his difficult childhood and his resulting mental health problems. Defendant points out that he has been shot four times, the first time being when he was nine years old. He further notes that he had no relationship with his father and was raised in a neighborhood surrounded by drugs and murders. In addition, defendant claims the trial court failed to adequately consider his potential for rehabilitation where the evidence showed he was previously employed and actively involved in the lives of his two children who need his support. He asks that we either reduce his sentence or remand for a new sentencing hearing.

¶ 36    Generally, the sentencing court enjoys broad discretion in imposing an appropriate sentence, and a sentence within the statutory range will not be disturbed on review absent an abuse of that discretion. *People v. Jones*, 168 Ill.2d 367, 373-74 (1995). An abuse of discretion exists where a sentence is at great variance with the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010).

¶ 37    We are not inclined to find an abuse of discretion at sentencing, at least not at this juncture. However, before we can fully reach the merits of defendant's argument, we must address the issue of forfeiture and, relatedly, the trial court's post sentencing admonishments.

¶ 38    By his own admission, defendant's sentencing challenge is forfeited because he did not file a motion to reconsider his sentence. *People v. Richards*, 2021 IL App (1st) 192154, ¶ 11 ("Generally, to preserve a sentencing issue for appeal, a defendant must raise the issue in the trial court, including through a written motion to reconsider the sentence."). He nevertheless argues that this court may address the merits of his issue on three separate grounds, specifically, that (1) in our discretion, we can excuse his forfeiture, (2) his trial counsel provided ineffective assistance, and (3) the plain error doctrine applies. As to the former, he argues that it would be unfair to find his claim forfeited because the trial court failed to admonish him that a post-sentencing motion was necessary to preserve his sentencing issue for appeal. Presumably in support, he provides the citation to Illinois Supreme Court Rule 605(a)(3) (eff. Oct. 1, 2001) and cites *People v. Davis*, 356 Ill. App 3d 725, 732 (2005), with a parenthetical stating that a defendant does not lose his appeal rights if he fails to file a post-sentencing motion due to improper admonishments.

¶ 39    Thus, defendant's argument in avoidance of forfeiture leaves much to be desired. He merely cites a single supreme court rule and a single case, *Davis,* which we might add, does little

to aid his cause. It is well settled that bare, conclusory contentions unsupported by argument violate Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) and are deemed forfeited. See *People v. Aljohani*, 2022 IL 127037, ¶ 61. We strongly admonish defendant that "[a] reviewing court is entitled to have issues clearly defined with pertinent authority cited and cohesive arguments presented; this court is not a repository into which an appellant may foist the burden of argument and research; it is neither the function nor the obligation of this court to act as an advocate or search the record for error." *People v. Edwards*, 2012 IL App (1st) 091651, ¶ 29. Notwithstanding the inadequacy of defendant's argument, we elect to consider the propriety of excusing defendant's forfeiture in this case.

¶ 40 That said, it has not escaped our notice that the State offers no response to defendant's argument regarding the trial court's failed admonishments. In fact, in all of its responses to defendant's excessive sentence argument, the State offers counterpoints, urging only that we find no abuse of discretion at sentencing.

¶ 41 Defendant posits that in the exercise of this court's discretion, we may overlook his forfeiture. Courts of review may sometimes override considerations of waiver or forfeiture in the interest of achieving a just result and maintaining a sound and uniform body of precedent. *Jackson v. Board of Election Commissioners of the City of Chicago*, 2012 IL 111928, ¶ 33. We are mindful that this "principle is not and should not be a catchall that confers upon reviewing courts unfettered authority to consider forfeited issues at will." *Id.*; see also *People v. McCarty*, 223 Ill. 2d 109, 159-60 (2006) (Freeman, J., concurring in part and dissenting in part, joined by Kilbride, J.) (noting that the rule allowing the court to ignore waiver should only be applied in those limited circumstances where it is necessary to reach a just result or maintain a uniform body of precedent).

For the following reasons, we believe that fundamental fairness requires us to apply this principle in this case.

¶ 42    Supreme Court Rule 605(a)(3) (eff. Oct. 1, 2001) provides in pertinent part:

"(3) At the time of imposing sentence or modifying the conditions of the sentence, the trial court shall also advise the defendant as follows:

A. that the right to appeal the judgment of conviction, excluding the sentence imposed or modified, will be preserved only if a notice of appeal is filed in the trial court within thirty (30) days from the date on which sentence is imposed;

B. that prior to taking an appeal, if the defendant seeks to challenge the correctness of the sentence, or any aspect of the sentencing hearing, the defendant must file in the trial court within 30 days of the date on which sentence is imposed a written motion asking to have the trial court reconsider the sentence imposed, or consider any challenges to the sentencing hearing, setting forth in the motion all issues or claims of error regarding the sentence imposed or the sentencing hearing;

C.  that any issue or claim of error regarding the sentence imposed or any aspect of the sentencing hearing not raised in the written motion shall be deemed waived; and

D. that in order to preserve the right to appeal following the disposition of the motion to reconsider sentence, or any challenges regarding the sentencing hearing, the defendant must file a notice of appeal in the trial court within 30 days from the entry of the order disposing of the defendant's motion to reconsider sentence or order disposing of any challenges to the sentencing hearing."

¶ 43    Here, although the trial court admonished defendant with respect to his right to appeal and the need to file a notice of appeal, it is undisputed that the court's admonishment included nothing regarding the need to file any a separate motion to preserve any challenges he might also have to his sentence.

¶ 44    Having found a violation of Rule 605(a)(3), we must decide the appropriate remedy. Our determination regarding available relief for the failed admonishments under Rule 605(a) begins with a review of our supreme court's decision in *People v. Henderson*, 217 Ill. 2d 449 (2005). In *Henderson*, the trial court advised the defendant of his right to appeal, his right to request that the clerk prepare and file a notice of appeal, and his right to have counsel appointed. *Id.* at 457. However, the defendant was given incomplete admonishments regarding the requirements for preserving sentencing errors for appeal. *Id.* at 457. Although the court advised the defendant of the need to file a motion to reduce his sentence, the court failed to describe to the defendant the full scope of the motion, including the fact that any issues not raised in the motion would be considered waived for appellate review. *Id.*

¶ 45    On appeal to our supreme court, the defendant argued that the trial court's failure to admonish him pursuant to supreme court Rule 605(a) required reversal and remand for proper admonishments and an opportunity to file a motion for reconsideration. *Henderson* at 451. The court disagreed. Relying on a principle announced in *People v. Davis*, 145 Ill. 2d 240 (1991), which addressed a similar question as it related to admonishments pursuant to supreme court rule 402, the *Henderson* court held that whether reversal was required depends on whether real justice had been denied or whether defendant had been prejudiced by the inadequate admonishment. *Id.* at 457 (citing *Davis*, 145 Ill. 2d at 250). In determining whether the defendant had suffered

prejudice or a denial of real justice, the *Henderson* court found instructive the reasoning in *People v. Willaims*, 344 Ill. App. 3d 334 (2003).

¶ 46     In *Williams*, the defendant, like the defendant in *Henderson*, received inadequate 605(a) admonishments. *Williams*, 344 Ill. App. 3d at 338. However, because the defendant failed to raise what the appellate court deemed to be any specific sentencing issue on appeal, the court reasoned that the defendant had suffered neither prejudice nor the denial of justice as a result of the trial court's inadequate admonishments. *Id.* at 338-339.  Accordingly, the court determined that remand was not required.

¶ 47     In defining "specific" sentencing issues, the *Henderson* court cited to *People v. Polk*, 349 Ill. App. 3d 760 (2004), noting that because the defendant in *Polk* had presented "specific sentencing issues" on appeal, he suffered prejudice, the remedy for which was remand for a new sentencing hearing. *Henderson*, 217 Ill. 2d at 470.

¶ 48     The defendant in *Polk*, like the defendant in the case now before us, specifically challenged his sentence as excessive on appeal. *Polk*, 349 Ill. App. 3d at 766. Given the similarity of *Polk* to our case, we set forth the facts and analysis of *Polk* in some detail.  There, at the conclusion of the sentencing hearing, the trial court admonished the defendant as follows:

> "And do you [*sic*] have the right to appeal the fact that you were found guilty.  You have the right to file a notice of [a]ppeal within 30 days.  It must be in writing; free lawyer will be provided, free trial transcript, as well.  You understand you have a right to appeal the fact that I found you guilty and in fact that I have just sentenced you?" *Id.* at 763.

¶ 49     On appeal, the defendant argued that the admonishments were inadequate because the trial court did not tell him that he had a right to file a motion to reconsider the sentence and that such a

motion was required to preserve sentencing errors for appeal. *Id.* He argued that had he been properly admonished, he would have filed a motion to reconsider arguing that the sentence was excessive in light of certain mitigating factors. *Id.* Thus, the defendant sought to have his case remanded for the trial court to issue proper Rule 605(a) admonishments and to permit him the opportunity to file a motion to reconsider his sentence. *Id.*

¶ 50     The State argued that remand would be a waste of judicial resources because the trial court had considered all of the evidence in mitigation and that the defendant made no claim that the trial court committed a sentencing error. *Id.* at 764.

¶ 51     The *Polk* court first distinguished *Williams* on the basis that the defendant in *Williams* did not identify any specific sentencing issues that he was unable to raise due to the trial court's incomplete admonishments. *Id.* at 766. Because the Polk defendant did raise specific sentencing claims on appeal, the court could not say that the defendant suffered neither prejudice nor a denial of real justice. *Id.* The court therefore remanded the case for proper Rule 605(a) admonishments and to afford the defendant an opportunity to file a motion to reconsider his sentence. *Id.*

¶ 52     We believe that the same relief is appropriate here. In his brief, defendant points out several specific facts which he believes should mitigate against his eight-and-a-half- year sentence. Like in *Polk*, we cannot say that defendant was not prejudiced or deprived of real justice by the court's incomplete admonishments. Accordingly, we remand for proper Rule 605(a) admonishments and to permit defendant to file a post sentencing motion. See *People v. Taylor*, 345 Ill. App. 3d 1064, 1083 (2004) (an allegedly excessive sentence was a sentencing error requiring remand for proper Rule 605(a) admonishments); see also *People v. Glenn*, 363 Ill. App. 3d 170, 181 (2006) (consideration of an improper aggravating factor required remand for a new sentencing hearing).

Having so concluded, we need not consider defendants additional arguments regarding excusal of his forfeiture.

¶ 53     Accordingly, we affirm defendant's conviction for UUWF, but remand the matter for proper Rule 605(a) admonishments and to permit defendant an opportunity to file a motion to reconsider his sentence, limited to the reasons stated in his brief.

¶ 54     Affirmed in part and remanded with directions.